ACCEPTED
03-14-00738-CV
4848348
THIRD COURT OF APPEALS
AUSTIN, TEXAS
4/10/2015 3:11:08 PM
JEFFREY D. KYLE
CLERK

# 03-14-00738-CV

In the Court of Appeals
For the Third District of Texas at Austin

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

4/10/2015 3:11:08 PM

JEFFREY D. KYLE
Clerk

**Elness, Swenson, Graham Architects, Inc.,**
*Appellant*,

**v.**

**RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP,
and RLJ Lodging Fund II Acquisitions, LLC,**
*Appellees*.

On Appeal from the
200th Judicial District Court of Travis County, Texas
Cause Number: D-1-GN-002325
The Honorable Stephen Yelenosky, Presiding Judge

## APPELLANT'S BRIEF

*Attorneys for Appellant*

**MACDONALD DEVIN, PC**
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@MacdonaldDevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@MacdonaldDevin.com
**Steven R. Baggett**
Texas Bar No. 01510680
SBaggett@MacdonaldDevin.com

*Oral argument requested*

In accordance with Texas Rule of Appellate Procedure 38.1, and to assist the members of this Court in determining whether disqualification and recusal under Texas Rule of Appellate Procedure 16 is necessary, Appellant certifies that the following is a complete list of the parties, attorneys, and other persons who have an interest in the outcome of this appeal:

**Defendant/Appellant**

    Elness, Swenson, Graham Architects, Inc.

**Counsel for Defendant/Appellant**

    Gregory N. Ziegler
    Texas Bar No. 00791985
    Steven R. Baggett
    Texas Bar No. 01510680
    Weston M. Davis
    Texas Bar No. 24065126
    MACDONALD DEVIN, PC
    1201 Elm Street
    3800 Renaissance Tower
    Dallas, Texas 75270
    214.744.3300 telephone
    214.747.0942 facsimile

**Plaintiffs/Appellees**

    RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP, and RLJ Lodging Fund II Acquisitions, LLC
        *represented by*
    Michael Huddleston
    Stephen Gibson
    Benton T. Wheatley
    Tracy L. McCreight
    Jessica C. Neufeld

MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Ave, Suite 3050
Austin, Texas 78701
512.391.6100
512.391.6149 fax

**Trial Court Judge**

The Honorable Stephen Yelenosky
Travis County Courthouse
100 Guadalupe, 4th Floor
Austin, TX 78701
512.854.9374

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests the opportunity to present oral argument, and has so noted on the cover of this Brief.[2] Although the facts and legal arguments at issue are thoroughly represented in this brief and the record, oral argument will significantly aid the decision in this case because it addresses complex issues of statutory and contractual construction, as well as evidentiary admissibility issues.

---

[2] *See* Tex. R. App. P. 39.7.

# TABLE OF CONTENTS

**Identity of Parties and Counsel** ...............................................................i

**Statement on Oral Argument** ............................................................... ii

**Table of Contents** ............................................................... iii

**Index of Authorities** ...............................................................v

**Statement of the Case** ...............................................................1

**Statement of Jurisdiction** ...............................................................3

**Issues Presented**...............................................................4

**Statement of Facts** ...............................................................4

**Summary of the Argument** ...............................................................12

**Argument** ...............................................................13

    **I.     Standard of Review**...............................................................13

    **II.    The trial court erred when it awarded RLJ Chapter 38 attorney's fees because RLJ did not recover any damages. (Issue No. 1)**......13

    **III.   The trial court erred in finding that RLJ owned an assigned breach of contract against ESG. (Issue No. 2)**...............................17

        **A.  South Ausaircourt did not assign any causes of action against ESG to any RLJ entity**...............................................................19

        **B.  The anti-assignment provision of the ESG Contract prohibited assignment of the contract itself**...............................................................28

    **IV.   The trial court abused its discretion when it admitted evidence of the ESG Contract without reference to evidentiary rules and principals. (Issue No. 3)**...............................................................31

831104.1   402/122

V.     **The trial court erred in submitting a jury question regarding ESG's contractual liability for structural engineering services. (Issue No. 4)** ...................................................................33

VI.    **The trial court erred in awarding RLJ diminution in value damages because the evidence was legally insufficient to support such damages.  (Issue No. 5)**...........................................36

    A.  **Hornsby's Appraisal Date is inappropriate and makes his testimony speculative, unreliable, irrelevant and inadmissible** .........................................................................38

    B.  **RLJ and Hornsby failed to provide any evidence linking the alleged diminution in value to ESG's alleged breach** .............43

    C.  **The "comparable" sales in Hornsby's comparative sales opinions are not sufficiently similar or comparable** ...............46

    D.  **Hornsby's opinion on future occupancy and income is belied by the Hotel's actual occupancy and income** ...........................50

    E.  **RJL improperly sought "stigma" damages through Hornsby's inadmissible testimony** ..............................................................53

    F.  **RLJ's legally insufficient evidence of market value damages requires a take-nothing judgment in favor of ESG** .................56

**Prayer** ...............................................................................................................57

**Certificate of Service** ....................................................................................58

**Certificate of Compliance** .............................................................................59

**Appendix Contents** ........................................................................................59

831104.1   402/122

# INDEX OF AUTHORITIES

## Cases

*Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.,*
    299 S.W.3d 106 (Tex. 2009) .......................................................................44

*Barraza v. Koliba,*
    933 S.W.2d 164 (Tex. Civ. App.–San Antonio 1996, writ denied) ............43

*Barry v. Jackson,*
    309 S.W.3d 135 (Tex. App.–Austin 2010, no pet.) ................... 39-40, 43, 48

*Battaglia v. Alexander,*
    177 S.W.3d 893 (Tex. 2005) ......................................................................17

*Bay Area Healthcare Group v. McShane,*
    239 S.W.3d 231 (Tex. 2007) ......................................................................33

*Blizzard v. Nationwide Mut. Fire Ins. Co.,*
    756 S.W.2d 801 (Tex. App—Dallas 1988, no pet.) ...................................15

*Bloom v. Burkholder  Corp.,*
    No. 05-94-01297-CV, 1995 Tex. App. LEXIS 4029 (Tex. App.–Dallas May
    30, 1995) ....................................................................................................56

*Boerschig v. Southwestern Holdings, Inc.,*
    322 S.W.3d 752 (Tex. App.–El Paso, 2010, no pet.) .................................22

*Brooks v. Chevron USA Inc.,*
    No. 13-05-029, 2006 Tex. App. LEXIS 4479 (Tex. App.–Corpus Christi,
    May 25, 2006, pet. denied) .........................................................................22

*Buccaneer Homes of Alabama, Inc. v. Pelis,*
    43 S.W.3d 586 (Tex. App.–Houston [1st Dist.] 2001, no pet.) ...................15

*Burroughs Wellcome Co. v. Crye,*
    907 S.W.2d 497 (Tex. 1995) ......................................................................52

*C&H Nationwide, Inc. v. Thompson,*
903 S.W.2d 315 (Tex. 1994) ...........................................................................17

*Cadle Co. v. Henderson,*
982 S.W.2d 543 (Tex. App.–San Antonio 1998, no pet.) ...........................28

*Ceramic Tile Int'l, Inc. v. Balusek,*
137 S.W.3d 722 (Tex. App.–San Antonio, 2004, no pet.) ..........................22

*Chiu Moon Chan v. Montebello Dev. Co.,*
No. 14-06-00936-CV, 2008 Tex. App. LEXIS 5980 (Tex. App.—Houston
[14th Dist.] July 31, 2008, pet. denied) ......................................................43

*Citrin Holdings, LLC v. Minnis,*
No. 14-11-00644-CV 2013 Tex. App. LEXIS 5723 (Tex. App.–Houston
[14th Dist.] May 9, 2013, pet. filed) ...........................................................53

*City of Brownsville, ex rel. Public Utilities Bd. v. AEP Texas Cent. Co.,*
348 S.W.3d 348 (Tex. App.–Dallas 2011, pet. denied) ........................ 23-24

*City of Carrollton v. RIHR, Inc.,*
308 S.W.3d 444 (Tex. App–Dallas 2010, pet. denied) .............................. 37

*City of Harlingen v. Estate of Sharboneau,*
48 S.W.3d 177 (Tex. 2001) .............................................................. 47-48

*Consol. Reinforcement, L.P. v. Carothers Exec. Homes, Ltd.,*
271 S.W.3d 887 (Tex. App.–Austin 2008, no pet.) .....................................14

*Cook v. Exxon Corp.,*
145 S.W.3d 776 (Tex. App.–Texarkana, 2004, no pet.) ............................ 22

*Downer v. Aquamarine Operators, Inc.,*
701 S.W.2d 238 (Tex. 1985) ...........................................................................33

*Dukes v. Philip Johnson/Alan Richie Architects, P.C.,*
252 S.W.3d 586 (Tex. App.–Fort Worth 2008, pet. denied) ...................... 34

*Ellis County State Bank v. Keever,*

888 S.W.2d 790 (Tex. 1994) ........................................................................17

*Emscor Mfg., Inc. v. Alliance Ins. Group,*
    879 S.W.2d 894 (Tex. App.–Houston [14[th] Dist.] 1994, writ denied) ........ 54

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.,*
    331 S.W.3d  419 (Tex. 2010) ................................................................. 22

*Exxon Corp. v. Pluff,*
    94 S.W.3d  22 (Tex. App.–Tyler 2002, pet. denied) ............................. 20-22

*Fire Insurance Exchange v. Sullivan,*
    192 S.W.3d 99 (Tex. App.–Houston [14[th] Dist.] 2006, pet. denied) ............15

*First Am. Title Ins. Co. v. Combs,*
    258 S.W.3d 627 (Tex. 2008) ................................................................. 13

*Goldman v. Olmstead,*
    414 S.W.3d  346 (Tex. App.—Dallas 2013, pet. denied) .......................... 41

*Green Intern., Inc. v. Solis,*
    951 S.W.2d 384 (Tex. 1997) .........................................................14, 16, 18

*Hammer v. Wood,*
    No. 14,07-01081-CV, 2009 Tex. App. LEXIS 6632 (Tex. App.–Houston [14[th] Dist.] Aug. 25, 2009, no pet.) ............................................................52

*Haubold v. Med Carbon Research Inst., LLC,*
    No. 03-11-00115-CV, 2014 Tex. App. LEXIS 2863 (Tex. App.–Austin Mar. 14, 2014, no pet.) ................................................................................. 16

*Heckman v. Williamson Cnty.,*
    369 S.W.3d 137 (Tex. 2012) ................................................................. 14

*Holland v. Wal-Mart Stores, Inc.,*
    1 S.W.3d  91 (Tex. 1999) ....................................................................... 14

*Houston Unlimited, Inc. v. Mel Acres Ranch,*
    443 S.W.3d 820, 824 (Tex. 2014) ........................................ 47-50, 53-54, 56

*Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.,*
     245 S.W.3d 1 (Tex. App.—Waco 2007, pet. denied) ................................. 15

*Indigo Oil v. Wiser Oil Co.,*
     No. 05-96-00984-CV, 1998 Tex. App. LEXIS 7550 (Tex. App.–Dallas, Dec. 7, 1998, pet. denied) ....................................................................... 22-24

*Intercontinental Group Partnership v. KB Home Lone Star L.P.,*
     295 S.W.3d 650 (Tex. 2009) ....................................................................15

*I.O.I. Sys., Inc. v. City of Cleveland,*
     615 S.W.2d 786 (Tex. App.–Houston [1st Dist.] 1980, writ ref'd n.r.e.) .... 34

*Guadalupe-Blanco River Authority v. Kraft,*
     77 S.W.3d 805 (Tex. 2002) ....................................................................... 47

*Kraft v. Langford,*
     565 S.W.2d 223 (Tex. 1978) ..................................................................... 54

*Kempner v. Heidenheimer,*
     65 Tex. 587 (1886) ................................................................................... 43

*La Teirra de Familia, Ltd. v. Main Event Entertainment, LP,*
     No. 03-10-00503-CV, 2012 Tex. App. LEXIS 1928 (Tex. App.–Austin, March 9, 12012, pet. denied) ................................................................. 21

*Lay v. Aetna Ins. Co.,*
     599 S.W.2d 684 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.) .......20, 22

*Lopez v. Munoz, Hockema Reed, L.L.P.,*
     22 S.W.3d 857 (Tex. 2000) ....................................................................... 31

*MBM Financial Corp. v. Woodlands Operating Co., L.P.,*
     292 S.W.3d 660 (Tex. 2009) ............................................................. 15-16

*Matheus v. Sasser,*
     164 S.W.3d 453 (Tex. App.–Fort Worth 2005, no pet.) .............................37

831104.1   402/122

*McGinty v. Hennen,*
    372 S.W.3d 625 (Tex. 2012) ................................................ 40-41, 44-45, 56

*Mood v. Kronos Prods., Inc.,*
    245 S.W.3d 8 (Tex. App.–Dallas 2007, pet. denied) ................................. 56

*Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.,*
    134 S.W.3d 195 (Tex. 2004) ....................................................... 16

*Natividad v. Alexsis, Inc.,*
    875 S.W.2d 695 (Tex. 1994) ......................................................20

*Natural Gas Pipeline Co. of Am. v. Justiss,*
    397 S.W.3d 150 (Tex. 2012) ......................................................49

*Naylor v. Siegler,*
    613 S.W.2d 546 (Tex. Civ. App. – Fort Worth 1981, no writ) ............. 43, 48

*Osterberg v. Peca,*
    12 S.W.3d 31 (Tex. 2000) ....................................................... 44

*Pape Equip. Co. v. I.C.S., Inc.,*
    737 S.W.2d 397 (Tex. App.–Houston [14[th] Dist.] 1987, writ ref'd n.r.e.) 24, 28

*Rancho La Valenica, Inc. v. Aquaplex, Inc.,*
    297 S.W.3d 781 (Tex. App.–Amarillo 2008, no pet.) ................................ 28

*Reef v. Mills Novelty Co.,*
    89 S.W.2d 210 (Tex. 1936) ................................................. 29-30

*Richey v. Stop N Go Markets of Tex.,*
    654 S.W.2d 430 (Tex. 1983) ............................................ 20-21, 24, 26, 28

*Ryan v. Morgan Spear Associates, Inc.,*
    546 S.W.2d 678 (Tex. Civ. App.–Corpus Christi 1977, writ ref. n.r.e.) ......34

*Ryan Mortgage Investors v. Fleming-Wood,*
    650 S.W.2d 928 (Tex. App.–Fort Worth 1983, writ ref'd n.r.e.) ................ 40

831104.1   402/122

*Schneider Nat'l Carriers, Inc. v. Bates,*
 147 S.W.3d 264 (Tex. 2004) .................................................................... 54

*Seaview Hospital, Inc. v. Medicenters of America, Inc.,*
 570 S.W.2d 35 (Tex. App.–Corpus Christi 1978, no pet.) .................... 35-36

*Senn v. Texaco, Inc.,*
 55 S.W.3d 222 (Tex. App.–Eastland 2001, pet. denied) ............................ 21

*Smith v. Herco, Inc.,*
 900 S.W.2d 852 (Tex. App.–Corpus Christi 1991, writ denied) ..................40

*State Farm Life Ins. Co. v. Beaston,*
 907 S.W.2d 430 (Tex. 1995) .................................................................... 15

*Stine v. Stewart,*
 80 S.W.3d 586 (Tex. 2002) .......................................................................19

*Stonehill-PRM WC I, L.P. v. Chasco Construction Ltd.,*
 No. 03-08-00494-CV, 2009 Tex. App. LEXIS 1019 (Tex. App.–Austin, Feb.
 11, 2009, no writ) ................................................................................ 55-56

*Texas Development Co. v. Exxon Mobil Corp.,*
 119 S.W.3d 875 (Tex. App.–Eastland 2003, no writ) ........................... 28-29

*Texas Farmers Ins. Co. v. Gerdes,*
 880 S.W.2d 215 (Tex. App.–Fort Worth 1994, writ denied) .......................28

*Texas Pacific Indem. Co. v. Atlantic Richfield Co.,*
 846 S.W.2d 580 (Tex. App.–Houston [14th Dist.] 1993, writ denied) ........ 29

*T.F.W. Mgmt. Inc. v. Westwood Shores Prop. Owners Ass'n.,*
 79 S.W.3d 712 (Tex. App.–Houston [14th Dist.] 2002, pet. denied) ........... 53

*Thweatt v. Jackson,*
 838 S.W.2d 725 (Tex. App.–Austin 1992) ............................................... 55

*Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,*
 642 S.W.2d 160 (Tex. 1982) .................................................................... 40

831104.1   402/122

*United States v. Downing,*
753 F.2d 1224 (3d Cir. 1985) ...................................................................... 46

*U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc.,*
104 S.W.3d 284 (Tex. App.–Beaumont 2003, pet. denied) ........................ 46

*Vann v. Bowie Sewerage Co.,*
90 S.W.2d 561 (Tex. 1936) ........................................................................ 20

*Westminster Falcon/Trinity L.L.P. v. Shin,*
No. 07-11-0033-CV, 2012 Tex. App. LEXIS 8833 (Tex. App.—Amarillo
Oct. 23, 2012, no pet.) ................................................................................ 39

*Whirlpool Corp.,*
298 S.W.3d 637 (Tex. 2009) ........................................................... 47, 51-52

## Statutes

Tex. Civ. Prac. & Rem. Code § 51.012 ....................................................................3

Tex. Civ. Practice & Remedies Code § 38.001 ............................... 3, 11, 13-15, 17

## Rules

Tex. R. App. P. 9.4 ................................................................................... 59

Tex. R. App. P. 38.1 ...................................................................................... i

Tex. R. App. P. 39.7 .................................................................................... ii

Tex. R. App. P. 44.1 ...................................................................................32

Tex. R. Civ. P. 279 .....................................................................................55

Tex. R. Evid. 803 .......................................................................................32

Tex. R. Evid. 901 .......................................................................................32

## Other Sources

7 Tex. Jur. Assignments  § 2 ................................................................................ 27

831104.1   402/122

# 03-14-00738-CV

In the Court of Appeals
For the Third District of Texas at Austin

---

**Elness, Swenson, Graham Architects, Inc.,**

*Appellant*,

**v.**

**RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP,
and RLJ Lodging Fund II Acquisitions, LLC,**

*Appellees*.

---

On Appeal from the
200th Judicial District Court of Travis County, Texas
Cause Number: D-1-GN-002325
The Honorable Stephen Yelenosky, Presiding Judge

---

TO THE HONORABLE JUSTICES OF THE COURT OF APPEALS:

Appellant Elness, Swenson, Graham Architects, Inc. ("ESG") complains of

the trial court's Final Judgment in the above-referenced cause, and shows:

### STATEMENT OF THE CASE

Appellees RLJ II-C Austin Air, LP, RLJ II-C Austin Air Lessee, LP, and

RLJ Lodging Fund II Acquisitions, LLC (collectively, "RLJ") filed the underlying

lawsuit in July 2010, alleging damage related to design and construction defects at

a Courtyard Austin Airport Hotel located at 7809 East Ben White Boulevard,

 831104.1   402/122

Austin, Texas (the "Hotel"). CR[1]:9. RLJ purchased the Hotel after its construction in December 2007. CR:10. Among other claims, RLJ alleged a breach of contract claim against ESG based on an agreement for architectural services that ESG entered with a non-party, White Lodging Services Corporation, Inc. ("White Lodging"). CR:9; 59-79.

White Lodging, with ESG's consent, later assigned ESG's contract to another entity, South Ausaircourt, L.P. ("South Ausaircourt"), who ultimately sold the Hotel to RLJ. CR:9; 174. RLJ asserted its breach of contract claim against ESG via assignment, stating that RLJ was "assigned all rights of the referenced contracts by White or Ausaircourt." CR:11.

ESG challenged this alleged assignment in the underlying action via summary judgment, and RLJ filed a reciprocal motion, seeking a pre-trial order establishing the validity of the assignment of the breach of contract claim against ESG. CR:80-98; 260-77; 383-402. The trial court denied ESG's motions and granted RLJ's motion, finding as a matter of law that the breach of contract claim against ESG was assigned to RLJ. CR:1063-64; 1083-84.

ESG and RLJ proceeded to trial, after which the jury found that ESG breached the contract and awarded $700,000 for loss of market value of the Hotel and $85,000 for repair and remediation costs. CR:1127. After trial ESG moved

---

[1] "CR" refers to the Clerk's Record and Supplemental Clerk's Record filed with this Court on December 15, 16, and 17, 2014.

831104.2   402/122

for application of $1.17 million in settlement credits for settlements entered between RLJ and other defendants in the case. CR:1173-79. The trial court applied the full amount of the settlement credits, extinguishing RLJ's full damage award. CR:1437-41. Despite the lack of damages, the trial court awarded RLJ $901,650.96 in attorney's fees pursuant to Texas Civil Practice and Remedies Code Section 38.001. CR:1708-12.

The trial court issued its Final Judgment on August 14, 2014, including the $785,000 jury verdict, plus $901,650.96 in Chapter 38 attorney's fees, minus the $1.17 million settlement credit, for a total of $516,650.96. CR:1708-12. RLJ moved for a new trial and to modify the judgment on September 12, 2014, both of which were denied on September 19, 2014. CR:1713-1906. ESG timely filed its notice of appeal on November 12, 2014. CR:1907-13.

## STATEMENT OF JURISDICTION

This court has jurisdiction over this appeal because Appellant is appealing a Final Judgment from the 200th Judicial District Court of Travis County. Tex. Civ. Prac. & Rem. Code §51.012.

## ISSUES PRESENTED

*1.      Did the trial court err when it awarded RLJ Chapter 38 attorney's fees, despite RLJ's failure to recover any damages?*

*2.      Did the trial court err in finding that the breach of contract claim against ESG and/or ESG Contract itself were assigned to RLJ?*

*3.      Did the trial court abuse its discretion in admitting the ESG Contract into evidence at trial?*

*4.      Did the trial court err in submitting a jury question regarding ESG's contractual liability for structural engineering services?*

*5.      Did the trial court err in awarding diminution in value damages?*

## STATEMENT OF FACTS

This case concerns alleged design and construction defects in a hotel RLJ purchased in December 2007.  CR:9-10.  In 2010, RLJ filed the underlying lawsuit alleging, among other things, that ESG breached its agreement to provide architectural services prior to RLJ's purchase of the Hotel.  CR:5-16; 184-95.

None of the RLJ entities contracted with ESG for any services related to the Hotel.  CR:59-79[2]; 385.  White Lodging originally owned the Hotel and entered into contracts for architectural, engineering, design, and construction services for

---

[2] ESG objects herein to the admissibility of the ESG Contract.  ESG's citations to and arguments regarding the ESG Contract are made for the purpose of the issues on this appeal and are not intended to waive ESG's objection to the admissibility of the contract.

the Hotel. CR 9. ESG agreed to provide architectural services with White Lodging in March 2005 (the "ESG Contract"). CR 59-79. ESG issued its architectural plans and drawings for construction of the Hotel on August 3, 2005, with revisions dated October 19, 2005. CR 91; 123-168.

RLJ's breach of contract claim relies on an alleged assignment of the ESG Contract and/or breach of contract cause of action. CR:190. The ESG Contract includes an anti-assignment clause requiring ESG's consent to any assignment. CR:107 (§1.3.7.9). White Lodging, with ESG's consent, assigned its interest in the ESG Contract to South Ausaircourt on September 19, 2005. CR:174. On September 21, 2005, South Ausaircourt assigned the ESG Contract (also with ESG's consent) to Integra Bank National Association ("Integra") as security for a loan from Integra to South Ausaircourt. CR:175-76. The assignment to Integra gave the lender certain rights under the ESG Contract in the event South Ausaircourt defaulted on its obligations to Integra. CR:175. ESG did not consent to any subsequent assignments of the ESG Contract. CR:179.

On March 16, 2006, RLJ entered a preliminary agreement to purchase the Hotel, called the "New Hotels Purchase and Sale Agreement" ("PSA"). CR:191. The PSA included the purchase of 99 other properties in addition to the Hotel. CR 191. On March 9, 2007, Terracon Consultants, Inc. ("Terracon"), White Lodging's geotechnical engineer, notified White Lodging that it had identified

cracks and other foundation issues at the Hotel. RR[3]:V.8, 25:5-15; V.17, EBCO Ex. 105. To resolve the alleged foundation issues and finalize the Hotel's sale, RLJ accepted a discount of $50,000 on the Hotel's price. CR:692. RLJ purchased the Hotel on December 20, 2007. CR:191; 691-94; RR:V.4, 12:24-13:1.

In July 2010 RLJ filed the underlying lawsuit against Terracon, ESG, EBCO General Contractor, Ltd., EBCO Advanced Building Systems, Ltd., and EBCO Warrior Management LLC (collectively "EBCO"), among other parties. CR:5-7. RLJ alleged breach of the contracts White Lodging entered for geotechnical engineering (Terracon), architectural plans (ESG), and construction (EBCO) of the Hotel. CR:10-12. RLJ alleged that they were "assigned all rights of the referenced contracts by White or Ausaircourt." CR:11. RLJ requested damages for these breaches "jointly and severally" against Terracon, ESG, and EBCO. CR:16. RLJ's live petition at the time of the time of trial was their Seventh Amended Original Petition, which contains the same breach of contract claims against Terracon, ESG, and EBCO. CR:184-85; 192-95; 202.[4]

---

[3] ESG refers to the Reporter's Record with the following abbreviation: Reporter's Record ("RR"):Volume ("V").

[4] RLJ alleged various other claims against Terracon, ESG, and EBCO, as well as claims against other parties throughout the underlying litigation. The only claims at the time of trial were RLJ's alleged assigned breach of contract claims against ESG and EBCO, as well as a breach of fiduciary duty claim against EBCO.

The ESG Contract required ESG to retain a sub-consultant to provide structural engineering services, specified in the contract as Marlin, Bridges, and Associates, Inc. ("MBA"). CR:61. The ESG Contract further required that ESG's design services "include" structural engineering services. CR:72 (§2.4.1). ESG entered a contract with MBA for structural engineering services (the "MBA Contract"). RR:V.12, Plaintiff's Ex. 13. The MBA Contract states that MBA was an independent contractor, "responsible for methods and means used in performance of" MBA's services and "is not an employee, agent, or partner of" ESG. *Id*. (§2.3). RLJ did not plead that ESG was vicariously liable for MBA's actions, but contended that the contractual language stating that ESG's services would "include" structural engineering services made ESG responsible for alleged deficiencies in MBA's structural engineering services. CR:193-95; 784-85.

ESG filed no-evidence and traditional summary judgment motions challenging the validity and existence of assignments of the ESG Contract and/or breach of contract claim to RLJ. CR:80-98; 260-277. ESG also filed a verified denial of RLJ's legal capacity to file suit based on the lack of any valid assignment. CR:44-58. RLJ filed their own traditional motion for partial summary judgment, seeking an order holding that the ESG Contract and breach of contract claim were validly assigned to RLJ. CR:383-401.

The ESG Contract's anti-assignment provision states that "neither [White Lodging] nor [ESG] shall assign this [Contract] without the written consent of the other, except that [White Lodging] may assign this [Contract] to an institutional lender providing financing for the Project." CR:107 (§1.3.7.9). ESG argued that the PSA did not assign the ESG Contract from South Ausaircourt to RLJ and, even if it did, the anti-assignment clause voided such assignment. CR:93-95. Although the anti-assignment clause would not preclude assignment of a pre-existing breach of contract claim against ESG, the PSA did not contain any such assignment. CR:268-71.

RLJ's motion argued that the PSA transferred both the ESG Contract and the pre-existing breach of contract claim from South Ausaircourt to RLJ. CR:386-92. RLJ contended that the anti-assignment clause did not prevent assignment of the ESG Contract and that the PSA's general transfer of "Contracts," "Assets," and "Property" associated with the Hotel transferred the ESG Contract and pre-existing cause of action. CR:395-400.

The trial court denied ESG's motions and granted RLJ's motion. CR:1063-64; 1083-84. The court issued a letter ruling in which it explained that it granted RLJ's motion and denied ESG's because (1) the anti-assignment clause was ineffective to preclude assignment of the ESG Contract "under these facts," (2) the

831104.2   402/122

PSA assigned the ESG Contract, and (3) assignment of the ESG Contract also included the breach of contract claim. CR:1057-60.

After the summary judgment rulings, RLJ settled its claim against Terracon for $70,000 and proceeded to trial on its claims against ESG and EBCO. CR:1080-81; 1476-88. Trial began on May 5, 2014. RR:V.2, 6. During trial, on May 12, 2014, RLJ announced a settlement of their claims against EBCO for $1.1 million. CR:1460-75. At trial, RLJ requested approximately $5.1 million in damages against ESG for diminution in value of the Hotel, $500,000 for "barrier remediation fees," and $350,000 for repairs to the Hotel. RR:V.10, 21:19-31:25. RLJ and ESG completed the trial and obtained a jury verdict on RLJ's allegedly assigned breach of contract claim against ESG. CR:1121-29.

The trial court issued two breach of contract questions in its charge to the jury:

1. Did ESG fail to comply with the Architectural Contract by failing to coordinate as required by the contract?

2. Did ESG fail to comply with the Architectural Contract regarding the structural engineering services required by the contract?

CR:1125-26. The jury answered "no" to the first question and "yes" to the second. *Id*. The jury awarded (1) $700,000 to RLJ for the difference in value of the Hotel as constructed and the value of the Hotel had ESG complied with the ESG

Contract; (2) $70,000 for barrier remediation; and (3) $15,000 for cost of repairs to the Hotel made through August 31, 2010. CR:1127.

ESG moved for directed verdict, objected to the jury charge, and moved for judgment notwithstanding the verdict based on (1) lack of evidence supporting any breach of the ESG Contract, (2) lack of assignment to RLJ of the ESG Contract or the breach of contract claim against ESG, and (3) lack of sufficient evidence of diminution in value damages. RR:V.9, 139:9-140:14; 142:18-147:19; 152:3-153:11; 154:11-19; CR:1130-37; 1252-57. ESG sought dismissal and objected to the jury charge on lack of assignment for the same reasons addressed in ESG's and RLJ's summary judgment motions. RR:V.9, 139:23-140:22; 152:3-10.

ESG also sought dismissal and objected to the jury charge because RLJ sought to hold ESG responsible for the performance of its structural engineering consultant, MBA. RR:V.9, 142:18-143:5; 152:17-23; CR:1252-57. RLJ did not plead or present evidence of ESG's vicarious liability for MBA's conduct and ESG is not strictly liable for MBA's conduct under Texas law. *Id*. ESG also argued that RLJ's diminution in value evidence was insufficient to support any verdict because RLJ's valuation expert, Paul Hornsby, provided speculative, unreliable, and inadmissible testimony. RR:V.9, 143:14-145:19; 153:6-11; CR:1130-37. The trial court denied ESG's motion for directed verdict, overruled ESG's objections to the

jury charge, and denied ESG's JNOV motion. RR:V.9, 151:3-6; 153:12-13; 154:19; CR:1436.

After the jury's verdict and prior to the Final Judgment, ESG moved to apply credits for Terracon's and EBCO's settlements with RLJ via the one-satisfaction of judgment rule. CR:1173-79. ESG requested credits for the full amount of both settlements ($1.17 million) to the jury's $785,000 verdict because RLJ sought common damages from ESG, Terracon, and EBCO and did not allocate damages specific to each defendant in its complaint or settlement agreements. *Id*. RLJ's position that the damages were "indivisible" supported ESG's argument. CR:1266. Because the settlement credits entirely subsumed the jury's verdict, ESG argued that it was the prevailing party and RLJ was not entitled to attorney's fees pursuant to Civil Practice and Remedies Code § 38.001. CR:1173-78.

The trial court issued a letter with its ruling on June 13, 2014. CR:1437-41. The trial court granted the motion to apply the full settlement credits, but determined that, despite RLJ's lack of recoverable damages, RLJ was the prevailing party and entitled to attorney's fees pursuant to Chapter 38.001. *Id*. The trial court issued its Final Judgment on August 14, 2014, including the $785,000 jury verdict, plus $901,650.96[5] in Chapter 38 attorney's fees, minus the $1.17 million settlement credit, for a total of $516,650.96. CR:1708-12.

---

[5] The parties stipulated that the court would determine the amount of attorney's fees. CR:1524.

RLJ moved for a new trial and to modify the judgment on September 12, 2014, both of which were denied on September 19, 2014. CR:1713-1906. ESG timely filed its notice of appeal on November 12, 2014. CR:1907-1913.

SUMMARY OF THE ARGUMENT

The judgment in this case erroneously finds breach of contract without privity or assignment or admissible evidence of a contract; awards lost profits disguised as diminution-in-value damages for a profitable Hotel, based on a dubious appraisal date and when consequential damages were waived; and awards attorney's fees without recovery of actual damages. RLJ did not recover any actual damages—they received compensation for their alleged damage prior to the jury's verdict. Contrary to Texas law, the trial court improperly awarded Chapter 38 attorney's fees despite the fact that RLJ did not actually recover any damages. Even ignoring RLJ's lack of damages, RLJ had no right to maintain its breach of contract claim against ESG because they were neither parties to that contract nor assigned any cause of action. Further, at trial RLJ failed to prove necessary elements of their claim, failing to (1) properly introduce the ESG Contract into evidence, (2) plead or prove ESG's liability for an independent contractor's conduct, or (3) introduce admissible evidence of market value damages. The trial court's failure to enter a take-nothing judgment on RLJ's claims and declare ESG the prevailing party in the face of these deficiencies was clear error.

12    831104.2    402/122

## I.     Standard of review

To the extent resolution of the issues before the trial court requires interpretation of a statute, a *de novo* standard is applicable. *First Am. Title Ins. Co. v. Combs,* 258 S.W.3d 627, 631 (Tex. 2008). An abuse of discretion standard of review is applicable where statutory interpretation is settled. *See Consol. Reinforcement, L.P. v. Carothers Exec. Homes, Ltd.*, 271 S.W.3d 887, 891 (Tex. App.–Austin 2008, no pet.). The applicable standard of review for each issue presented is identified in the corresponding section below.

## II.    The trial court erred when it awarded RLJ Chapter 38 attorney's fees because RLJ did not recover any damages. (Issue No. 1)

The trial court correctly ruled that RLJ's settlements with EBCO and Terracon applied as credits against the jury's verdict against ESG. CR:1437-41; 1708-12. The trial court erred[6] in deciding that, despite failing to recover any damages from ESG, RLJ were prevailing parties entitled to attorney's fees pursuant to Tex. Civ. Prac. & Rem Code §38.001.[7] *Id*. The trial court incorrectly ruled that, because the EBCO settlement occurred during the trial and not pre-trial,

---

[6] Whether Texas law recognizes a particular basis for the recovery of attorney's fees is a question of law that is reviewed de novo. *See Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999) (per curiam) (availability of attorney's fees under particular statute is question of law); *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012).

[7] ESG presents this argument first because a ruling in ESG's favor would result in ESG being the prevailing party in the underlying case, requiring a take nothing judgment for ESG and eliminating the need to address ESG's remaining appellate issues.

Texas Supreme Court precedent on the application of settlement credits did not apply. CR:1437-41.

"To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) *recover damages*." *Green Intern., Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (emphasis added). The Texas Supreme Court later summarized this ruling by stating that "suits cannot be maintained solely for the attorney's fees; *a client must gain something before attorney's fees can be awarded*." *MBM Financial Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 662 (Tex. 2009) (emphasis added).

Texas appellate courts have long held that a plaintiff is not a prevailing party and not entitled to Chapter 38 attorney's fees where its damages are fully encompassed by settlement credits:

- *Imperial Lofts, Ltd. v. Imperial Woodworks, Inc.*, 245 S.W.3d 1, 7 (Tex. App.—Waco 2007, pet. denied) ("Because the settlement credits and insurance payment exceeded the jury's damage award, we hold that Lofts was not the prevailing party and was not entitled to recover its attorney's fees.");

- *Blizzard v. Nationwide Mut. Fire Ins. Co.*, 756 S.W.2d 801, 806-07 (Tex. App.—Dallas 1988, no pet.) ("Blizzard was not awarded any recovery on her claim, not because Nationwide was entitled to an offset, but because Nationwide had already paid Blizzard all the damages she was able to prove. In these circumstances, we conclude that Blizzard is not entitled to recover attorney fees.");

14

- *Buccaneer Homes of Ala., Inc. v. Pelis*, 43 S.W.3d 586, 591 (Tex. App.—Houston [1st Dist.] 2001, no pet.) ("Although appellees won a jury verdict in the trial court, the One Satisfaction Rule bars them from recovering economic damages, and thus, they cannot recover attorney's fees.");

- *Fire Ins. Exch. v. Sullivan*, 192 S.W.3d 99, 109 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Because the [Plaintiffs] should have recovered no actual damages under their DTPA and contract claims, they cannot recover attorney's fees as to these claims.").

The trial court did not dispute the holdings above. Instead, it created its own rule of law, premised on the ***timing*** of the parties' settlements. CR:1439-41. The trial court reasoned that, because the majority of the settlement credit (the $1.1 million settlement with EBCO) occurred during trial, denying RLJ attorney's fees was a "disincentive to settle." CR:1440. There is no precedent to support this ruling and it is contrary to the clear and consistent holdings of the Texas Supreme Court. *See Green Intern.*, 951 S.W.2d at 390; *MBM Financial*, 292 S.W.3d at 662; *Intercontinental Group Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Mustang Pipeline Co., Inc. v. Driver Pipeline Co., Inc.*, 134 S.W.3d 195, 201 (Tex. 2004); *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 437 (Tex. 1995) (all holding that, absent recovery of damages, attorney's fees are not recoverable under Chapter 38).

Section 38.001 provides that a successful party in an action for breach of contract may recover reasonable attorney's fees ***in addition to the amount of a valid claim and costs***. Tex. Civ. Prac. & Rem. Code § 38.001. The phrase "a

valid claim" means that a party must first receive damages before being awarded attorney's fees. *See Green Int'l*, 951 S.W.2d at 390; *Haubold v. Med. Carbon Research Inst., LLC*, No. 03-11-00115-CV, 2014 Tex. App. LEXIS 2863, at *20 (Tex. App.—Austin Mar. 14, 2014, no pet.) ("[T]here must be a recovery of money, or at least something of value; otherwise, the attorney's fee award cannot be described as an 'addition' to the claimant's relief") (citations omitted). RLJ did not recover damages. Consequently, the trial court's award of Chapter 38 attorney's fees violates Texas Supreme Court precedent.

The trial court's reasoning is flawed in two respects. First, it states that RLJ is not "made whole" absent recovery of their attorney's fees, implying that the attorney's fees are actual damages. CR:1440. They are not. RLJ did not seek attorney's fees as actual damages, but as a statutory recovery under Chapter 38. Attorney's fees under Chapter 38 "cannot fairly be considered a part of the amount of the judgment." *See C & H Nationwide, Inc. v. Thompson*, 903 S.W.2d 315, 325-26 (Tex. 1994) (citations omitted) (modified on other grounds by *Battaglia v. Alexander*, 177 S.W.3d 893, 909 (Tex. 2005)); *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 797, n.13 (Tex. 1994). No one is "made whole" through a recovery of attorney's fees under Chapter 38 because they are not actual damages.

Second, the trial court reasoned that precluding Chapter 38 attorney's fees where settlement credits subsume an entire damages award would "greatly

discourage parties from settling."[8]  CR:1441.  This argument does not comport with the trial court's reasoning for applying settlement credits in the immediately preceding section.  The trial court stated "[t]he source of RLJ's disappointment regarding damages is the jury verdict, not the application of settlement credits to it."  CR:1439 (emphasis added).  The same analysis applies to Chapter 38 attorney's fees.  RLJ sought almost *six million dollars* in damages against ESG.  RR:V.10, 21:19-31:25.  ESG believed (and the jury found) that those damages were greatly exaggerated.  The settlement credits did not preclude a settlement—ESG's and RLJ's disagreement over the value of the claim precluded settlement.  Because of that disagreement, the parties tried the case.  *RLJ tried and failed to prove damages in excess of its settlement credits* and as a result cannot be awarded Chapter 38 attorney's fees.

*If* a party recovers damages, it *may* receive attorney's fees under Chapter 38. Tex. Civ. Prac. & Rem. Code §38.001; *Green Int'l*, 951 S.W.2d at 390.  This statutory remedy requires, as a condition precedent, a recovery of damages.  Because RLJ did not recover any damages, the trial court erred by awarding Chapter 38 attorney's fees.

---

[8] The trial court's new rule also does not account for the Terracon settlement that occurred *before trial*.  The trial court did not even address this issue, but it appears from the court's letter that RLJ would not be entitled to attorney's fees related to Terracon's settlement.  CR:1441. This inconsistency highlights the inconsistency and unworkable nature of the trial court's decision.

831104.2   402/122

**III. The trial court erred in finding that RLJ owned an assigned breach of contract claim against ESG. (Issue No. 2)**

ESG did not enter into a contract with any of the RLJ entities. CR:59-79; 385. ESG contracted with the former property owner, White Lodging. CR:59-79. RLJ's claims rely on alleged assignments of the ESG Contract and/or breach of contract claim against ESG when RLJ purchased the Hotel.[9] The following timeline illustrates the timing and parties involved in these transactions:

- March 30, 2005: ESG and White Lodging enter the ESG Contract (CR:59-79);

- August 3, 2005: ESG issues its architectural plans and drawings for construction of the Hotel (CR:91; 123-168);

- September 19, 2005: White Lodging assigns (*with ESG's consent*) the ESG Contract to South Ausaircourt (CR:174);

- September 21, 2005: South Ausaircourt assigns (*with ESG's consent*) the rights under the ESG Contract to Integra Bank contingent on South Ausaircourt's loan (CR:175-76);

- October 19, 2005: ESG issues revisions to its architectural plans and drawings (CR:162-68);

- March 16, 2006: RLJ Acquisitions enters the PSA, agreeing in principle to the purchase price of the Hotel, subject to an inspection period and subsequent closing (CR:191);

---

[9] RLJ admitted in the underlying proceedings that they allege only an assigned *cause of action* against ESG, rather than assignment of the ESG Contract itself. CR:222; 392. Accordingly, RLJ may not argue that they have capacity or standing to sue based on an assignment of the ESG Contract itself. In an abundance of caution, ESG addresses arguments related to assignment of the ESG Contract itself herein. In any event, no valid assignment of the ESG Contract or any cause of action against ESG occurred.

 831104.2  402/122

- November 21, 2006: EBCO issues the final application for payment for construction of the Hotel (CR:583-92);

- March 9, 2007: Notice from Terracon regarding foundation cracks at the Hotel (RR:V.8, 25:5-15; V.17, EBCO Ex. 105);

- December 20, 2007: RLJ Acquisitions executes the Ninth Amendment to the PSA, closing the sale of the Hotel and transferring the Hotel to RLJ Acquisitions (CR:389; 707-09).

A cause of action for breach of contract accrues at the time of breach, and remains with the owner at the time of the breach even after sale of the property, absent an assignment. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002); *Richey v. Stop N Go Markets of Tex.*, 654 S.W.2d 430, 432 (Tex. 1983). Any breach in this case occurred, at the latest, when the Hotel was completed. Accordingly, South Ausaircourt owned the breach of contract claim against ESG when RLJ purchased the Hotel. CR:693. RLJ's purchase did not include the breach of claim against ESG unless it was expressly assigned from South Ausaircourt to RLJ. *Richey*, 654 S.W.2d at 432. It was not.

### A. South Ausaircourt did not assign any causes of action against ESG to any RLJ entity.

RLJ argued to the trial court that the PSA included a transfer of a "basket of rights" from South Ausaircourt to RLJ. CR:238; 394. The trial court erred[10] in accepting this argument because a plain reading of the PSA reveals that this

---

[10] Because rendition of summary judgment involves a question of law, the trial court's decision is reviewed de novo. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

"basket of rights" ***does not include any causes of action***. As applied to transfers of property, such as this case, a cause of action is personal to the owner at the time of the breach or damage (in this case, South Ausaircourt). *Vann v. Bowie Sewerage Co.*, 90 S.W.2d 561, 562 (Tex. 1936); *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App. Tyler 2002, pet. denied); *Lay v. Aetna Ins. Co.*, 599 S.W.2d 684, 686 (Tex. Civ. App—Austin 1980, writ ref'd n.r.e.) ("A cause of action for injury to real property accrues when the injury is committed."). A subsequent owner who did not own the property at the time of the injury may only bring suit where the subsequent owner receives an ***express assignment*** of the cause of action. *See Richey*, 654 S.W.2d at 432.

The express assignment requirement is longstanding blackletter law enforced by appellate courts around the state:

- *Vann v. Bowie Sewerage Co., Inc.,* 90 S.W.2d 561, 562-63 (Tex. 1936) ("Where injury to land results . . . the right of action for all the damages resulting from the injury accrues to the owner of the land at the time the thing that causes the injury commences to affect the land.");

- *Richey v. Stop N Go Markets of Tex.*, 654 S.W.2d 430, 432 (Tex. 1983) ("Because there was no express assignment here of his cause of action to Depew, Richey retained his right to pursue the case following transfer of the property");

- *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 331 S.W.3d 419, 424 (Tex. 2010) ("For more than 100 years, this Court has recognized that a cause of action for injury to real property accrues when the injury is committed. ***The right to sue is a personal right that belongs to the person who owns the property at the time of the injury***, and the right to sue does not pass to a

subsequent purchaser of the property unless there is an express assignment of the cause of action.");

- *La Teirra de Familia, Ltd. v. Main Event Entertainment, LP.,* No. 03-10-00503-CV, 2012 Tex. App. LEXIS 1928, at *16 (Tex. App.—Austin, March 9, 2012, pet. denied) ("a mere subsequent purchaser cannot recover for an injury committed before his or her purchase");

- *Lay v. Aetna Ins. Co.,* 599 S.W.2d 684, 686 (Tex. App.—Austin 1980, writ ref'd n.r.e.) ("a mere subsequent purchaser cannot recover for an injury committed before his purchase");

- *Ceramic Tile Int'l, Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.) ("A subsequent purchaser cannot recover for an injury committed before his purchase ***absent an express provision*** in the deed, or as here an assignment, granting him that power");

- *Brooks v. Chevron USA Inc.,* No. 13-05-029, 2006 Tex. App. LEXIS 4479 (Tex. App.—Corpus Christi May 25, 2006, pet. denied) (mem. op.) ("A purchaser of real property cannot recover for injury to the property committed before his purchase ***absent an express provision in a deed or an assignment*** granting him that power.");

- *Cook v. Exxon Corp.*, 145 S.W.3d 776, 781 (Tex. App.—Texarkana 2004, no pet.) ("Without express provision, ***the cause of action does not pass to a subsequent purchaser of the property*** . . . Without such an express provision, a subsequent purchaser cannot recover for an injury committed before his or her purchase.");

- *Senn v. Texaco, Inc.*, 55 S.W.3d 222, 226 (Tex. App.—Eastland 2001, pet. denied) ("Without the breach of a legal right belonging to the plaintiff, no cause of action can accrue to his benefit.");

- *Boerschig v. Southwestern Holdings, Inc.*, 322 S.W.3d 752, 767 (Tex. App.—El Paso 2010, no pet.) ("Absent any evidence showing Boerschig bargained for an assignment of the prior owner's possible causes of action for injuries to the land that occurred before his purchase, he cannot rely on the discovery rule to defeat his lack of standing.");

- *Exxon Corp. v. Pluff*, 94 S.W.3d 22, 27 (Tex. App.—Tyler 2002, pet. denied) ("a mere subsequent purchaser cannot recover for an injury committed before his purchase.");

- *Indigo Oil v. Wiser Oil Co.*, No. 05-96-00984-CV, 1998 Tex. App. LEXIS 7550, at \*32 (Tex. App.—Dallas Dec. 7, 1998, pet. denied) ("A subsequent conveyance of property does not extinguish an accrued cause of action for damages.").

There is no dispute that the breach of contract cause of action accrued prior to RLJ's purchase of the Hotel. CR:236; 239. Accordingly, Texas law required RLJ to obtain an ***express assignment*** from the claim's owner in order to bring the claim against ESG. No such assignment occurred.

The trial court's letter ruling commingled the separate issues of assignment of contract and causes of action. CR:1059. The trial court reasoned that assignment of the ESG Contract[11] included an express assignment of the causes of action associated with that contract. *Id*. The court distinguished the cases above because they generally addressed assignment of pre-existing tort claims (or lack thereof), rather than contract claims. CR:1058-59. The court reasoned (without authority) that a general warranty deed including "all torts" might suffice to convey pre-existing torts and that the cases did not hold "that an express transfer of a contract need also expressly assign the cause of action under that contract." *Id*. The court's ruling is wrong for two reasons—(1) Texas law holds that assignment

---

[11] This argument fails for the simple reason, as addressed in the next section, that RLJ did not receive a valid assignment of the ESG Contract from South Ausaircourt.

of a contract does not include pre-existing causes of action and (2) no assignment of any cause of action occurred in this case.

Texas law distinguishes between assignment of rights under a contract and assignment of causes of action based on the contract—assignment of one does not necessarily affect the other. *See e.g., City of Brownsville ex rel. Public Utilities Bd. v. AEP Texas Cent. Co.*, 348 S.W.3d 348, 358 (Tex. App.—Dallas 2011, pet. denied); *Indigo Oil*, 1998 Tex. App. LEXIS 7550 at *32 (assignment of contract did not include assignment of pre-existing causes of action based on the contract). An assignment is a manifestation by the owner of a right of his intention to transfer the right to an assignee. *Pape Equip. Co. v. I.C.S., Inc.*, 737 S.W.2d 397, 399 (Tex. App.-Houston [14th Dist.] 1987, writ ref'd n.r.e.). "To recover on an assigned cause of action, one must plead and prove that a cause of action capable of being assigned existed ***and was assigned to the party alleging the theory of assignment***." *Id*. (emphasis added). An express assignment is one that is ***directly and distinctly stated***. *See Richey*, 654 S.W.2d at 431; Black's Law Dictionary, Definition of "Express," 580 (6th Edition 1990).

The PSA is 69 pages long and contains 89 subsections delineating the terms of the agreement—not one of those sections includes the assignment of any causes of action to RLJ. CR:606-76. South Ausaircourt conveyed the Hotel to RLJ acquisitions, including the defined terms "Assets," "Contract," and "Property."

831104.2    402/122

CR:613-19. RLJ argued that these defined terms included an assignment of the breach of contract claim against ESG. CR:388-89. They do not. The definitions are as follows:

> "Assets" shall mean, with respect to each Property, all of the Personal Property, Supply Inventories, Consumable Inventories, Contracts, and Licenses and Permits, now owned or hereafter acquired by each Seller in connection with or relating to its Property, other than any Excluded Assets with respect to such Property. CR:613.

> "Contracts" shall mean, with respect to each Property, (i) all conference, convention and banquet room contracts, guest room reservations, (ii) all leases, concessions and other occupancy agreements, if any, with tenants of the Property, (iii) all leases covering the equipment necessary to operate the Property, if any, and (iv) all contract, agreements (other than subcontracts) and warranties covering the design, development, construction, operations, maintenance and repair of the Property and/or equipment located in the Property. CR:615.

> "Property" shall mean the fee simple interest or leasehold interest, as applicable, in a particular parcel of real estate identified by address on **Schedule B**, and by legal description on **Schedule B-1**, together with (i) the Improvements constructed on, or to be constructed on, such real estate; and (ii) the Assets. CR:619.

In the "Recitals" section of the PSA, RLJ Acquisitions stated its "desire to purchase all of the Properties ***and thereby acquire all of Sellers' respective right, title and interest in and to the Properties*** upon the terms and conditions hereinafter set forth." CR:612 (emphasis added). RLJ further relied on clauses stating that Ausaircourt would "assign and deliver to Purchaser . . . true and

24

complete originals or copies of architects agreements and general contracts for the Property" (CR:624 (§3.1(a))) and "Seller and White Lodging shall . . . cooperate with Purchaser in the enforcement of any rights under the architectural, construction, or other similar contracts respecting the design, development and construction of the Hotel" (CR:643 (§8.1(m))).

RLJ argued that the clause above regarding cooperation in enforcement of rights under the contracts "contemplated" that all pre-existing causes of action were assigned. CR:394. According to RLJ, this agreement to cooperate resulted in two assignment documents, executed in December 2007 that included assignments of the pre-existing ESG breach of contract claim. CR:389. They do not. The first is an "Assignment and Assumption of Contracts and Leases" (the "Lease Assignment"), which assigns seven contracts related to operation of the Hotel to RLJ II-C Austin Air Lessee, LP. CR:695-700. The Lease Assignment is limited to the seven contracts identified therein (which does not include the ESG Contract) and does not assign any pre-existing causes of action to anyone. *Id*.; CR:877-79.

RLJ also cited to the "Assignment and Assumption of Licenses, Permits and Intangibles" (the "License Assignment"), which provided that Ausaircourt "hereby sells, transfers, conveys and assigns to [RLJ Lessee] all of [Ausaircourt's] right, title and interest in and to all licenses, permits and all other intangible assets relating to the Property." CR:701-05. RLJ contended that the undefined term

"intangible assets" includes South Ausaircourt's breach of contract claim against ESG and satisfied the express assignment requirement. CR:389. It does not.

An express assignment is one that is ***directly and distinctly stated***. *See Richey*, 654 S.W.2d at 431; Black's Law Dictionary, Definition of "Express," 580 (6th Edition 1990). The phrase "intangible assets" is not defined to include any cause of action, much less to ***expressly*** include the breach of contract claim against ESG. There is no authority or evidence to support RLJ's claim that the phrase "intangible assets" actually included causes of action against ESG.

Black's Law Dictionary defines "intangible asset" as "assets lacking physical existence," such as "patents, trademarks, organization costs, goodwill." Black's Law Dictionary, 118 (6th Edition 1990). Although intangible asset does not include causes of action, the definition of "nominal asset," directly below, includes "assets whose value is difficult to determine; e.g. ***a judgment or claim***." *Id*. (emphasis added). Further, the definition of "right" includes that it is a "legally enforceable claim of one person against another." *Id*. at 1324. No authority supports the proposition that causes of action are included within "intangible assets" and no evidence shows that Plaintiffs were assigned any intangible "rights."

Finally, RLJ attempted to introduce extrinsic evidence regarding the intent of the PSA. CR:386-87; 596-97; 602-04; 691-93. RLJ needed this extrinsic

831104.2    402/122

evidence because, as clearly explained above, none of the contract documents actually assign the pre-existing breach of contract claim from South Ausaircourt to RLJ. ESG objected to this extrinsic evidence, which the trial court sustained, finding that the contractual documents are not ambiguous and excluding the extrinsic evidence. CR:1058; 1063-64; 1083-84.

Construction of an assignment is governed by the same rules of construction as any contract. *See Rancho La Valencia, Inc. v. Aquaplex, Inc*., 297 S.W.3d 781, 783 (Tex. App.—Amarillo 2008, no pet.); *Cadle Co. v. Henderson*, 982 S.W.2d 543, 546 (Tex.App.—San Antonio 1998, no pet.) (citation omitted). Not every contract involving a transfer of interests is an assignment—there must be a manifestation of intent to transfer the right being assigned (in this case, the cause of action). *Id*.; *see also* 7 Tex. Jur. Assignments § 23.

There is no language in the PSA or any ancillary agreements indicating that South Ausaircourt intended to assign RLJ the pre-existing breach of contract claim against ESG. The plain and unambiguous language of the PSA shows that no such assignment ever occurred. The contractual provisions RLJ relied on simply do not assign any existing causes of action under Texas law. *Richey*, 654 S.W.2d at 431; *see also Pape*, 737 S.W.2d at 400 (finding that authorization of appellee to bring suit on appellant's behalf was not a valid assignment of a cause of action). The

831104.2    402/122

trial court erred in finding that RLJ received a valid assignment of the pre-existing breach of contract claim against ESG.

## B. The anti-assignment provision of the ESG Contract prohibited assignment of the contract itself.

Assignment of a contract and assignment of an accrued breach of contract claim are two separate issues. RLJ did not receive an assignment of any breach of contract claim against ESG. Although assignment of the contract itself is irrelevant to assignment of the pre-existing cause of action, ESG addresses assignment of the contract in an abundance of caution. Because the ESG Contract contained an anti-assignment provision and South Ausaircourt did not obtain ESG's consent to assign the ESG Contract, RLJ never received a valid assignment of that contract.

It is undisputed that the ESG Contract with White Lodging contained an anti-assignment clause requiring ESG's consent for assignment and ESG did not consent to an assignment of the ESG Contract to any of the RLJ entities. CR:385. RLJ argued that it nonetheless received an assignment of the ESG Contract because (1) the anti-assignment clause did not apply to South Ausaircourt and (2) even if the clause applied, it would not invalidate the assignment, but would require ESG to bring a claim against South Ausaircourt. CR:228-30; 238-44.

Anti-assignment clauses are enforceable in Texas. *Reef v. Mills Novelty Co.*, 89 S.W.2d 210, 211 (Tex. 1936); se*e also Texas Development Co. v. Exxon Mobil*

*Corp.*, 119 S.W.3d 875, 879 (Tex. App.—Eastland 2003, no writ); *Texas Farmers Ins. Co. v. Gerdes*, 880 S.W.2d 215, 218 (Tex. App.—Fort Worth 1994, writ denied); *Texas Pac. Indem. Co. v. Atlantic Richfield Co.*, 846 S.W.2d 580, 583 (Tex. App.—Houston [14th Dist.] 1993, writ denied). In the absence of a successful attack upon an anti-assignment clause, a party is entitled to have the trial court enforce it. *Texas Pac. Indem. Co.*, 846 S.W.2d at 583.

RLJ argued that ESG's previous consent to assign the ESG Contract to South Ausaircourt extinguished South Ausaircourt's obligation to obtain ESG's consent for any further assignments of the ESG Contract.[12] CR:240-41. Neither the ESG Contract nor Texas law provides any such release. The anti-assignment clause in the ESG Contract states the following:

> ***[White Lodging] and [ESG]***, respectively, ***bind themselves, their*** partners, successors, ***assigns*** and legal representatives ***to the other party to this Agreement*** and to the partners, successors, assigns and legal representatives of such other party ***with respect to all covenants of this Agreement***. Neither [White Lodging] nor [ESG] shall assign this Agreement without the written consent of the other, except that [White Lodging] may assign this Agreement to an institutional lender providing financing for the Project. In such event, the lender shall assume [White Lodging's] rights and obligations under this Agreement.

---

[12] RLJ's argument is belied by the fact that South Ausaircourt did obtain ESG's consent to a subsequent assignment to its lender, Integra Bank. CR:175-76. South Ausaircourt clearly understood that ESG's consent was necessary for any assignment of the ESG Contract.

CR:66 (§1.3.7.9). South Ausaircourt, as White Lodging's assignee, was bound to all covenants of the ESG Contract, including the anti-assignment provision. The ESG Contract further states: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either [White Lodging] or [ESG]." *Id*. (§1.3.7.5).

RLJ's summary judgment arguments mixed the issues of assignment of the contract itself with assignment of the breach of contract cause of action. CR:238-44. While the anti-assignment clause did not preclude assignment of the breach of contract claim against ESG (although no such assignment occurred), Texas law and the plain language of the clause itself clearly precluded assignment of the contract without ESG's consent. *Reef*, 89 S.W.2d at 211. Accordingly, any assignment of the ESG Contract from South Ausaircourt to RLJ was void.[13] To the extent the trial court's summary judgment rulings relied on assignment of the ESG Contract itself, the trial court committed error.

---

[13] RLJ also argued at one point that a "constructive assignment" of the ESG Contract occurred when ESG's designated representative for the Hotel project signed and sealed the architectural plans, estopping ESG from enforcing the anti-assignment clause. CR:245-47. This argument is nonsensical, as the parties to the contract agreed to the scope of the representative's duties, which he did not exceed. CR:61, 63 (§§ 1.1.3.4; 1.2.3.3). It does not appear that the trial court relied on this argument in reaching its ruling, but it is meritless nonetheless. *See e.g., See Lopez v. Munoz, Hockema & Reed, L.L.P*., 22 S.W.3d 857, 864 (Tex. 2000); CR:886.

**IV.** **The trial court abused its discretion when it admitted evidence of the ESG Contract without reference to evidentiary rules and principles. (Issue No. 3)**

RLJ's claim against ESG was based on breach of the ESG Contract, which necessarily required evidence regarding, and admission of, the contract itself. At trial, RLJ attempted to admit the ESG Contract through the testimony of Carl Mayfield, *an RLJ employee*. RR:V.3, 94:13-14, 96:4-8, 109:5-110:23. ESG objected to admission of the ESG Contract based on RLJ's failure to lay an adequate foundation, hearsay, lack of authenticity, and lack of personal knowledge. RR:V.3, 110:15-18. The trial court deferred ruling on the admissibility of the ESG Contract and counsel for RLJ did not ask Mr. Mayfield any additional foundational questions. RR:V.3, 112:13-113:3.

The next day, the trial court addressed its deferred ruling on the admissibility of the ESG Contract and overruled ESG's objections, admitting the contract into evidence. RR:V.4, 8:11-9:22. RLJ's counsel, however, never elicited testimony from Mr. Mayfield or any other witness sufficient to admit the ESG Contract into evidence. Mr. Mayfield's testimony regarding the ESG Contract consisted of three statements—(1) the agreement was for the "Courtyard Austin Airport," (2) RLJ received the agreement from White Lodging at the time of their purchase of the Hotel, and (3) Mr. Mayfield is the custodian of records for RLJ. RR:V.3, 109:11-110:11.

The ESG Contract itself is hearsay. RLJ was not a party to the ESG Contract and Mr. Mayfield, as its representative, has no personal knowledge regarding the terms of the ESG Contract. CR:59-79. RLJ's counsel did not establish the requisites for any exception to the hearsay rule, such as the business records exception, via Mr. Mayfield's (or any other witness's) testimony. Tex. R. Evid. 803. RLJ also failed to properly authenticate the ESG Contract. Tex. R. Evid. 901.

The trial court abused its discretion in admitting the ESG Contract because, regardless of the parties' off-the-record conversations, RLJ failed to lay the proper foundation to establish (1) that Mr. Mayfield has personal knowledge of the contents of the ESG Contract, (2) the application of any hearsay exception to the ESG Contract, or (3) the authenticity of the ESG Contract. A trial court abuses its discretion in admitting evidence when it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). The trial court's error in admitting the ESG Contract warrants reversal because the jury could not have returned a verdict for RLJ absent evidence of the ESG Contract's terms. *See* Tex. R. App. P. 44.1; *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007).

**V.    The trial court erred in submitting a jury question regarding ESG's contractual liability for structural engineering services.  (Issue No. 4)**

At trial RLJ alleged that ESG was responsible for MBA's structural engineering services. *See e.g.*, RR:V.10, 11:7-13; 12:8-12.  The trial court erred in submitting a question to the jury on this issue because RLJ did not plead or prove any theory of respondeat superior or vicarious liability against ESG for MBA's structural engineering services.  CR:193-95; 784-85.  MBA's contract with ESG stated that MBA was an independent contractor, "responsible for methods and means used in performance of" MBA's services and "is not an employee, agent, or partner of" ESG.  RR:V.12, Plaintiff's Ex. 13 (§2.3).

RLJ contended that the provision in the ESG Contract stating that ESG's services would "include" structural engineering services required ESG to warrant the quality of MBA's work.  CR:72 (§2.4.1); RR:V.10, 11:7-13; 12:8-12.  ESG's contract does not contain any warranty or guarantee regarding the quality of the structural engineering services.  CR:59-79.  The trial court erred in submitting the second question to the jury because, absent such a warranty or guarantee, an architect can only be held liable for its own failure to exercise reasonable care.  CR:1126.

In contracting for services, an architect's duty depends on the particular agreement entered into with its employer. *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 594 (Tex. App.—Fort Worth 2008, pet. denied);

*I.O.I. Sys., Inc. v. City of Cleveland*, 615 S.W.2d 786, 790 (Tex. App.—Houston [1st Dist.] 1980, writ. ref'd n.r.e.). An engineer or an architect must use the skill and care in the performance of his duties commensurate with the requirements of its profession and is only liable for a failure to exercise reasonable care and skill commensurate with those requirements. *Dukes,* 252 S.W.3d at 594.

In the absence of a special agreement, an architect is not liable for faults in construction resulting from defects in the plans. The architect does not imply or guarantee a perfect plan or a satisfactory result, but only that the architect is not the cause of any failure. *Ryan v. Morgan Spear Assocs., Inc.*, 546 S.W.2d 678, 681 (Tex. App.—Corpus Christi 1977, writ ref. n.r.e.). "There is no implied promise that miscalculations may not occur." *Id.* (also holding that "[a] warranty by an architect will not be implied unless there is the clearest reason for it, and the burden of showing such reason rests on the one seeking to establish the warranty"). Here, the ESG Contract simply states that structural engineering services are included within the price of the contract, not that ESG will guarantee or warrant the quality of that work. RR:V.12, Plaintiff's Ex. 13 (§2.3).

The *Morgan Spear* case is directly analogous and holds that an architect does not certify that its consultant's work is free from defect. *Id.* There, owners of an animal hospital sued the architect for defects allegedly created by the architect's

consultants. *Id.* The architectural contract provided that the architect would provide the following services:

> [t]he preparation of preliminary studies, working drawings, specifications, large scale and full size detail drawings, for architectural, structural, plumbing, heating, electrical, and other mechanical work; assistance in the drafting of forms of proposals and contracts; and the general supervision through construction of the project.

*Id.* at 680. After completion, the building began to deteriorate and the owners filed a breach of contract claim against the architect, alleging that the architect failed to properly test soil, resulting in the damaged property. *Id.* After a jury issued a take nothing verdict, plaintiffs appealed the trial court's jury question regarding the architect's professional negligence. *Id.* The question simply asked whether the architect "was negligent in the performance of its professional services." *Id.* Plaintiffs contended that the question should have asked whether the architect breached its contractual duty to prepare plans and specifications free from defect. *Id.*

The appellate court upheld the question as submitted, finding that the "architect is not liable for faults in construction resulting from defects in the plans, as his undertaking does not imply or guarantee a perfect plan or a satisfactory result" and that "an architect is only liable for a failure to exercise reasonable care and skill." *Id.* at 681. Here, ESG agreed to arrange for structural engineering services, but nothing in the agreement requires that ESG guarantee that work or

831104.2  402/122

indemnify Plaintiffs for any defects arising from the work. RR:V.12, Plaintiff's Ex. 13. Such an interpretation is consistent with Texas law, under which ESG, who is not a licensed engineer, ***literally cannot agree to provide structural engineering services***. *Seaview Hosp., Inc. v. Medicenters of Am., Inc.*, 570 S.W.2d 35, 39 (Tex. App.–Corpus Christi 1978, no pet.) ("a contract for engineering services to be performed by a person who is prohibited from practicing engineering in Texas is void and unenforceable"). ESG may only be liable for its own alleged failure to exercise reasonable care and skill, not that of MBA. The trial court erred in submitting a question to the jury that included ESG's responsibility for MBA.

## VI. The trial court erred in awarding RLJ diminution in value damages because the evidence was legally insufficient to support such damages. (Issue No. 5)

The evidence at trial was legally insufficient to support the jury's $700,000 award of market value damages.[14] RLJ's only evidence of market value damages is the testimony of Paul Hornsby ("Hornsby"). Hornsby is an appraiser who offered expert testimony as to the market value of the Hotel as of August 31, 2010 (the "Appraisal Date"). According to Hornsby, the market value of the Hotel on the Appraisal Date in an unimpaired state would have been $13,650,000 and the market value as actually constructed was $7,220,000. RR:V.7, 143-44; 148. Thus,

---

[14] Whether the trial court erred by applying an improper measure of damages is a question of law that is subject to de novo review. *City of Carrollton v. RIHR Inc.*, 308 S.W.3d 444, 452 (Tex. App.- Dallas 2010, pet. denied); *Matheus v. Sasser*, 164 S.W.3d 453, 458 (Tex. App.- Fort Worth 2005, no pet.).

831104.2  402/122

Hornsby offered the opinion that the "loss" in market value of the Hotel as of the Appraisal Date was $6,430,000—the difference between the impaired and unimpaired values. *Id*.

Hornsby's opinions on market value were based on an "income" approach.[15] Hornsby calculated the anticipated net income after the Appraisal Date based on the anticipated occupancy rate, rental rate, and expenses of the Hotel. RR:V.7, 129-30. He then used a factor (a divisor) known as a capitalization rate, which when applied to the anticipated net income expands the numbers to reach an estimated value. RR:V.7, 130-31.

Hornsby alternatively used a "sales comparison" approach in connection with the value of the Hotel in an unimpaired state. RR:V.7, 142. Hornsby compared two other hotels in the Austin area that were sold one-to-four years before the Appraisal Date, and used those alleged "comparable" sales to come up with a value of $13.8 million for the Hotel in an unimpaired state as of the Appraisal Date. CR:974-81; RR:V.7, 142-43. Hornsby did not use the sales comparison approach to set a value of the Hotel in its "impaired state" (i.e., the Hotel as it actually exists), claiming he could not find any comparable sales. RR:V.7, 145.

---

[15] As opposed to a "cost" approach or "sales comparison" approach.

Hornsby's testimony is irrelevant because the Appraisal Date is not a proper date from which to measure market value damages. His testimony is also irrelevant because the "impaired state" he used to determine market value of the Hotel included *all* alleged impairments due to the work of several contractors and subcontractors instead of being limited to impairments allegedly caused by ESG. Additionally, Hornsby's testimony fails to satisfy the reliability requirements imposed on expert testimony under Texas law because (1) the "comparable" sales he used for the sales comparison approach were not truly comparable, (2) his predictions and assumptions used to value the Hotel under the income approach were not reliable, and (3) to the extent it is legally possible for RLJ to recover market value damages, Hornsby's conclusory testimony cannot establish the amount of any such damages. Hornsby's testimony is legally insufficient to support any award of market value damages.

### A. *Hornsby's Appraisal Date is inappropriate and makes his testimony speculative, unreliable, irrelevant, and inadmissible.*

The jury found ESG breached its contract by failing to properly provide the structural engineering services required under that contract. CR:1126. The undisputed trial testimony in this case established that the Hotel was completed in October 2006 and later sold to Appellees in December 2007. RR:V.4, 12-13, 45; P. Ex. 132; P. Ex. 193; RR:V.5, 116. If, in fact, ESG breached its contract, that

breach occurred, at the latest, when the Hotel was completed.[16] *Barry*, 309 S.W.3d at 141; *see also Westminster Falcon/Trinity L.L.P. v. Shin*, No. 07-11-0033-CV, 2012 Tex. App. LEXIS 8833, at \*2, 8-9 (Tex. App.—Amarillo Oct. 23, 2012, no pet.) (mem. op.) (holding that market value damages were required to be measured as of date of substantial completion of home under residential construction contract).

The relevant date for any appraisal of the market value of the Hotel in determining difference-in-value damages would have been in 2006. Hornsby's opinions, however, are based on the Appraisal Date of August 31, 2010, which is almost four years later. RR:V.7, 124. The Appraisal Date has absolutely nothing to do with any relevant date related to RLJ's claims. Instead, it is an arbitrary date, chosen primarily because it coincides with the first date Hornsby happened to inspect the Hotel. RR:V.7, 124-25. Hornsby acknowledged he could have appraised the Hotel as of its completion date in 2006, but chose not to do so. RR:V.7, 125.

"Evidence that has no relationship to any issue in the case does not satisfy rule 702 and is thus inadmissible under rule 702, as well as rules 401 and 402."

---

[16] Even if the relevant date were the later date when Appellees purchased the Hotel in December, 2007 (which it is not), that date is still almost three years before the Appraisal Date. RR:V.4, 12-13. Moreover, there was damage to the Hotel due to movement in the foundation in the spring of 2007—prior to RLJ's purchase—and RLJ was aware of this damage, as they used this knowledge to negotiate a discount in their purchase price. RR:V.3, 122, 124-25, 141-43, 187-88.

*Exxon Pipeline*, 88 S.W.3d at 629 (quoting *Robinson*, 923 S.W.2d at 556); *see* Tex. R. Evid. 402. "There are two measures of damages for breach of a construction contract: (1) remedial damages, which is the cost to complete or repair less the unpaid balance of the contract price, and (2) difference-in-value damages, which is the difference between the value of the building as constructed and its value had it been constructed according to the contract." *McGinty v. Hennen*, 372 S.W.3d 625, 627 (Tex. 2012) (citing *Turner, Collie & Braden, Inc. v. Brookhollow, Inc*., 642 S.W.2d 160, 164 (Tex. 1982)).

As this Court has observed, "the measure of damages is the difference between the contract price and the property's market value ***at the time of the breach***." *Barry v. Jackson*, 309 S.W.3d 135, 140 (Tex. App.—Austin 2010, no pet.) (emphasis added). This rule is well-supported by the Texas Supreme Court and other Texas appellate courts. *See McGinty*, 372 S.W.3d at 628 (applying difference-in-value damages for damages caused by mold in a house "as of the date of the closing"); *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied) (stating that measure of damages for breach of real estate contract is "the difference between the price the seller was to receive and the market value of the property at the date of the breach"); *Smith v. Herco, Inc*., 900 S.W.2d 852, 861 (Tex. App.—Corpus Christi 1995, writ denied); *Ryan Mortgage*

*Investors v. Fleming-Wood*, 650 S.W.2d 928, 935 (Tex. App.—Fort Worth 1983, writ ref'd n.r.e.).

In *McGinty*, a home buyer sued the builder for breach of contract based on alleged construction defects that resulted in mold damage to the home. *McGinty*, 372 S.W.3d at 626. In assessing damages for breach of contract, the jury was asked to determine the difference, "as of the date of the closing," in the value of the home as it was received and the value if it had been built as represented. *Id*. at 628. Among other issues, the Texas Supreme Court considered whether the home buyer's testimony concerning the value of the home as of the time of trial could support an award of damages in favor of the home buyer. *Id*. at 626-27. In no uncertain terms, the court held it could not:

> The [home buyer] . . . testified to the value of his house at the time of trial, which was six years after the closing date.. In response to a question asking if he knew what his property was worth, [the home buyer] stated, "In my layman's ability to do so, I have an idea of what I think it's worth today." He then proceeded to testify that his house was worth $450,000 to $475,000 and that "without all these problems" it would be worth $875,000. ***This testimony is no evidence of the difference in value at the time of closing***.

*Id*. at 628 (emphasis added). Based on this holding, the Texas Supreme Court reversed a judgment in favor of the home buyer and rendered a take-nothing judgment in favor of the builder. *Id*. at 629.

41

Like the home buyer's testimony in *McGinty*, Hornsby's testimony is irrelevant to the determination of the market value of the Hotel as of the date of any breach. If there were any breach in this case, it occurred when the Hotel was completed or, at the very least, when RLJ purchased the Hotel. The Appraisal Date is almost four years after the completion date and almost three years after RLJ's purchase of the Hotel. Hornsby's testimony concerning the market value of the Hotel as of the Appraisal Date is no evidence of the Hotel's market value as of the date of any breach.

In fact, using the Appraisal Date to determine the value of the Hotel in this case makes even less sense than the date chosen in *McGinty*. At least the home buyer in *McGinty* chose a date that had something to do with the disposition of the claim. In this case, the Appraisal Date is one of more than 2,700 days between the completion of the Hotel and the time of trial and appears to have been arbitrarily chosen. The standards for recovering damages do not permit RLJ to pull a date out of a hat that is hundreds or even thousands of days away from any alleged breach and recover difference-in-value damages as of that date.

As this Court and others have recognized, the fluctuating nature of real estate values dictates that any difference-in-value damages awarded be based on value as of the pertinent date. *See Barry*, 309 S.W.3d at 141 (stating that "[r]ecent events in the nationwide real estate market show without a doubt that one year can

make an enormous difference in the value of real estate"); *Kempner v. Heidenheimer*, 65 Tex. 587, 591 (1886); *Chiu Moon Chan v. Montebello Dev. Co.*, No. 14-06-00936-CV, 2008 Tex. App. LEXIS 5980, at *11 (Tex. App.- Houston [14th Dist.] July 31, 2008, pet. denied) (mem. op.) (stating that "[r]eal property has a fluctuating value' and '[t]here is no way to ascertain at any given time what the value of a particular tract of real property might be in the future'") (quoting *Naylor v. Siegler*, 613 S.W.2d 546, 547 (Tex. Civ. App.—Fort Worth 1981, no writ)).

In his testimony, Hornsby acknowledged the market value of the Hotel on the Appraisal Date would be different from its market value when the Hotel was completed, and, in fact, admitted he has no idea what the Hotel's market value would have been at any time other than the Appraisal Date. RR:V.7, 158-59. Hornsby's testimony cannot support any market value damages. *See Barry*, 309 S.W.3d at 142; *Barraza v. Koliba*, 933 S.W.2d 164, 170 (Tex. App.—San Antonio 1996, writ denied).

**B.**     ***RLJ and Hornsby failed to provide any evidence linking the alleged diminution in value to ESG's alleged breach.***

Even if the Appraisal Date were proper for determining the market value of the Hotel (which it is not), Hornsby's opinion on the market value of the Hotel in an "impaired state" (which he compared with the alleged value of the Hotel in an "unimpaired state" to determine difference-in-value damages) is not relevant to the

difference-in-value damage question presented to the jury in the Charge because it was not based on and limited to alleged defects caused by ESG.

The Charge asked the jury to determine "[t]he difference, if any, between the value of the [H]otel as constructed and the value of the [H]otel had [Appellant] complied with the Architectural Contract." CR:1127. The predicate liability question, answered in the affirmative, asked the jury to determine whether "ESG fail[ed] to comply with the Architectural Contract regarding the structural engineering services required by the contract." CR:1126.

The Texas Supreme Court has made it very clear in several recent opinions that, in determining whether there is any evidence to support a jury verdict, the court must "measure the evidence by the charge as given." *McGinty*, 372 S.W.3d at 628. *See also Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. National Dev. & Research Corp.*, 299 S.W.3d 106, 112 (Tex. 2009); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). Any expert opinion based on a different standard than the standard presented to the jury is "no evidence" and cannot support any jury findings. *See McGinty*, 372 S.W.3d at 628 (holding that opinion of property's value at date of trial was "no evidence" to support jury's finding as to value "as of the date of the closing").

Appellant did not perform actual construction work on the Hotel and there were several other contractors and sub-contractors tasked with performing various

jobs in connection with the Hotel project. CR:188-89. Several of these other contractors and sub-contractors, including EBCO, were defendants in this lawsuit, and RLJ alleged those parties failed to perform their work properly and were responsible for the alleged defects in the Hotel. CR:187-89. RLJ offered evidence at trial that EBCO failed in several respects to build the Hotel in accordance with the plans and specifications. RR:V.7, 43, 48, 51-62, 85. There was also evidence that the geotechnical engineer, Terracon, failed to perform its services in accordance with its agreement. RR:V.4, 42, 49-50.

Hornsby failed to base his opinions on any alleged failure of ESG to comply with its contract. Instead, Hornsby's opinions regarding loss in market value are based on *all* alleged defects with the Hotel—regardless of whether they have anything to do with ESG's alleged breach. RR:V.7, 159. Hornsby freely acknowledged that his opinions do not distinguish between any alleged impairment due to ESG and any other contractors or sub-contractors on the Hotel project. RR:V.7, 159:8–160:12.[17]

Because Hornsby did nothing to tie his opinion on "impaired value" to any alleged defective performance of ESG, his opinion does not provide any

---

[17] Based on the report Hornsby submitted in this case, it appears his opinions regarding alleged impaired value primarily involved alleged construction defects that would be attributable to EBCO rather than ESG. In his report, he repeatedly characterized the market value losses he came up with as the difference between the Hotel "as constructed" and the Hotel "as if constructed in accordance with the Construction Contract." RR:V.7, 155-56; CR:938; 942-44; 974; 994-96. Although the term "construction contract" is not defined in the report, ESG's contract was for architectural services rather than construction. *See generally* CR:59-79.

meaningful guidance in assessing any damages against ESG.  It is analogous to describing a particular basketball player's scoring total by providing the team's total score.   Hornsby's testimony is not relevant to the amount of damages allegedly caused by ESG, and cannot support a jury verdict or judgment for damages against ESG.  *See Robinson*, 923 S.W.2d at 556 ("To be relevant, the proposed testimony must be 'sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'") (quoting *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985)); *U.S. Rest. Props. Operating L.P. v. Motel Enters., Inc.*, 104 S.W.3d 284, 292 (Tex. App.—Beaumont 2003, pet. denied).

### C.     *The "comparable" sales in Hornsby's comparative sales opinions are not sufficiently similar or comparable.*

Even if Hornsby's opinions regarding the alleged impaired and unimpaired value of the Hotel as of the Appraisal Date were relevant (which they are not), those opinions are also unreliable because they are based on faulty data and assumptions, and are conclusory.  Accordingly, they cannot support any judgment for difference-in-value damages in this case.

Hornsby attempted to bolster his opinions regarding market value of the Hotel by using the sales comparison approach.   Under the sales comparison approach, the appraiser finds data for sales of similar property that are "voluntary," "near in time," "in the vicinity," and "involve land with similar characteristics." *City of Harlingen v. Estate of Sharboneau*, 48 S.W.3d 177, 182 (Tex. 2001).  "The

appraiser then uses the prices from the comparison sales, which establish the market value of the similar properties, to determine the market value of the subject property, by adjusting the price upward or downward to account for differences between the properties." *Houston Unlimited, Inc. v. Mel Acres Ranch*, 443 S.W.3d 820, 829-30 (Tex. 2014). In using this approach, "it is incumbent upon [Hornsby] to connect the data relied on and his . . . opinion and to show how that data is valid support for the opinion reached." *Whirlpool Corp.*, 298 S.W.3d at 642.

Before Hornsby can properly offer a market value opinion based on comparable sales, he must show that the other sales are actually "comparable" to the value of the Hotel as of the Appraisal Date. *See Houston Unlimited, Inc.*, 443 S.W.3d at 836 (stating that "[t]he comparative sales method fails when the comparison is made to sales that are not, in fact, comparable to the land condemned") (quoting *Guadalupe-Blanco River Authority v. Kraft,* 77 S.W.3d 805, 808 (Tex. 2002)). Among other things, Hornsby failed to establish that the so-called "comparable" sales in this case were "near in time" to the Appraisal Date. *Estate of Sharboneau*, 48 S.W.3d at 182.

The dates of sale for the three "comparable" sales Hornsby used were (1) March 7, 2007, (2) March 6, 2009 and (3) November 30, 2007. The sales in 2007 predated the Appraisal Date by almost three years, and the 2009 sale predated the Appraisal Date by approximately a year and a half. As discussed previously, this

Court has recognized that "one year can make an enormous difference in the value of real estate." *Barry*, 309 S.W.3d at 141; *see also Naylor*, 613 S.W.2d at 547. None of these other sales could properly be considered "near in time" to the Appraisal Date, and Hornsby never offered any evidence other than his conclusory assumptions to establish that the market conditions for the sale of commercial real estate remained the same during the entire three-year span encompassing the other sales and the Appraisal Date. *See Houston Unlimited, Inc.*, 443 S.W.3d at 835. As a consequence, Hornsby's attempt to use the so-called "comparable" sales to establish the market value of the Hotel as of the Appraisal Date lacks the reliable foundation necessary give it any evidentiary value. *See Havner*, 953 S.W.2d at 714.

In addition, Hornsby failed to establish the other hotels had "similar characteristics" to the Hotel in this case. The primary "similarities" Hornsby noted between the Hotel and the comparison properties were that they were "limited service hotels in Austin" that "were built relatively recently." RR:V.7, 142. Although Hornsby acknowledged the time difference between the Appraisal Date and completion of the other hotels, he attempted to justify this significant distinction by explaining that, "[u]nlike houses, we don't have hundreds of comps to choose from." RR:V.7, 142-43. Difficulty in finding comparable properties is not an excuse to use properties that are not truly comparable in attempting to

determine market value. *See Kraft*, 77 S.W.3d at 809 (stating that difficulty in finding comparable properties does not justify appraisal based on properties that are not truly comparable). Moreover, Hornsby made various "adjustments" to supposedly account for various differences in location, physical characteristics, age and condition of the other hotel properties, but did not provide any information or analysis to support his determinations as to how the adjustments were made. CR:982-83; *see Houston Unlimited, Inc.*, 443 S.W.3d at 837. The conclusory nature of Hornsby's testimony makes it unreliable and incapable of supporting a judgment. *See Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 161 (Tex. 2012).

Finally, Hornsby did not use the sales comparison approach to attempt to determine the market value of the Hotel "as constructed." Instead, he acknowledged "[w]e couldn't find any sales in Austin of hotels that had had similar problems and then sold." RR:V.7, 145. To the extent Hornsby sought to use the sales comparison approach to determine the market value of the Hotel in an unimpaired state and the income approach to determine the market value of the Hotel as constructed, he did not explain how or why an appraiser could properly determine difference-in-value damages when the impaired and unimpaired values that are compared are based on different valuation methods. If Hornsby was not comparing apples to apples, then he should have explained why comparing apples

to something else would result in the same conclusion. His failure to do so makes any valuation opinion based on the sales comparison approach unreliable and inadmissible in evidence. *See Houston Unlimited, Inc*., 443 S.W.3d at 829.

**D.** ***Hornsby's opinion on future occupancy and income is belied by the Hotel's actual occupancy and income.***

In applying the income approach, Hornsby used a series of assumptions and predictions regarding future occupancy and income related to the Hotel. In general, Hornsby predicted the Hotel's annual net operating income would have been approximately $1,330,644 if the Hotel had been constructed without defects and approximately $866,107 as actually constructed. RR:V.7, 141, 147; CR:993; 996. Hornsby then used these figures in a formula to conclude the difference-in-value damages for the alleged defects in the Hotel as of the Appraisal Date were in the amount of $6,430,000. RR:V.7, 148; CR:996.

Hornsby acknowledged in his trial testimony that one of the ways to assess the reliability of his income predictions is to look at actual income for the Hotel after the Appraisal Date and see how it varied from what was predicted. RR:V.7, 170-71. Because the trial of this case was almost four years after the Appraisal Date, the actual income figures for the Hotel after the Appraisal Date were available at the time of trial. The actual income data shows that the Hotel, as constructed, made ***more*** money than Hornsby predicted it would have made in an "unimpaired" condition, with actual annual net operating income of $1,001,000 in

2012 and $1,770,000 in 2013. RR:V.7, 172-73. In other words, based on Hornsby's opinion regarding the value of the Hotel as it allegedly "should have been constructed," RLJ actually suffered *no loss* of income because of the way it was *actually* constructed. RR:V.7, 172-74.

Hornsby also acknowledged that the actual occupancy rate and rental rate for the Hotel in the time between the Appraisal Date and the time of trial was substantially higher than he had predicted. RR:V.7, 180-83. In fact, Hornsby admitted he is not aware of any situation in which RLJ was required to turn away a single Hotel guest because of any defects or related repair work at the Hotel. RR:V.7, 164.

There is no dispute Hornsby's predictions regarding income, occupancy rate and rental rate for the Hotel were not anywhere close to the actual numbers. The Texas Supreme Court has recognized time and again that an expert's opinion is unreliable and inadmissible "if it is based on assumed facts that vary from the actual facts." *Whirlpool Corp.*, 298 S.W.3d at 637 (citing *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995)). Further, by his own standards, the predictions Hornsby used to attempt to quantify Appellees' purported difference-in-value damages were not reliable. RR:V.7, 170-71.

Despite the substantial gap between Hornsby's predictions and reality, Hornsby nevertheless asserted that he could not properly consider future events in

valuing the Hotel as of the Appraisal Date. RR:V.7, 149-50. The problem with this position is that the jury and the Court have to determine what damages, if any, were actually incurred. It is absurd to advocate for a recovery of damages based on speculative "losses" that do not actually exist.[18] *See, e.g., Hammer v. Wood*, No. 14-07-01081-CV, 2009 Tex. App. LEXIS 6632, at *7-8 (Tex. App.- Houston [14th Dist.] Aug. 25, 2009, no pet.) (mem. op.).

Interestingly, Hornsby himself recognized the problem with exalting speculation over reality in explaining why he did not conduct his appraisal of the Hotel based on the date the Hotel was completed. According to Hornsby, an appraisal of the Hotel in its "impaired state" as of the completion date would have been "problematic, because the problems were not yet known." RR:V.7, 125-26. Based on this same reasoning, Hornsby cannot properly disregard what actually happened, and use inaccurate and unreliable estimates to support RLJ's claim for difference-in-value damages. *See Whirlpool Corp.*, 298 S.W.3d at 640; *Citrin Holdings, LLC v. Minnis*, No. 14-11-00644-CV, 2013 Tex. App. LEXIS 5723, at *40 (Tex. App.—Houston [14th Dist.] May 9, 2013, pet. filed).

---

[18] Hornsby's assertion that his clearly-inaccurate estimates of lost income should be exalted over the actual income figures is like asserting that a plaintiff in a serious car accident who actually suffered no injuries should somehow collect damages as if serious injuries had occurred because those types of injuries would typically be expected from an accident of that nature. No Texas court has ever awarded, or would ever award, damages on that basis.

 831104.2   402/122

**E.** ***RLJ improperly sought "stigma" damages through Hornsby's inadmissible testimony.***

In forming his opinion on the market value of the Hotel, Hornsby assumed that all of the remedial work that could be done had already been completed by the Appraisal Date. RR:V.7, 123-24. There is no evidence the Hotel was permanently damaged, or that it could not be completely restored through repair work. As a consequence, it appears Hornsby's appraisal opinion is based on so-called "stigma" damages.

Stigma damages are based on "damage to the reputation of the realty." *Houston Unlimited, Inc*., 443 S.W.3d at 824 (quoting *Smith v. Carbide & Chems. Corp.*, 226 S.W.3d 52, 55 (Ky. 2007)). They "represent[] the market's perception of the decrease in property value caused by the injury to the property." *Houston Unlimited, Inc*., 443 S.W.3d at 824 (quoting Jennifer L. Young, *Stigma Damages: Defining the Appropriate Balance Between Full Compensation and Reasonable Certainty*, 52 S.C. L. Rev. 409, 424 (2001)).

The Texas Supreme Court has never directly addressed the issue of whether stigma damages can be properly recovered under Texas law. *Houston Unlimited, Inc*., 443 S.W.3d at 825. As a general rule, it is not within the province of this Court or the trial court to create new legal duties or claims that have not been recognized by the Texas Legislature or the Texas Supreme Court. *See T.F.W. Mgmt, Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 720 (Tex.

831104.2 402/122

App.—Houston [14th Dist.] 2002, pet. denied); *Emscor Mfg., Inc. v. Alliance Ins. Group*, 879 S.W.2d 894, 910 (Tex. App.—Houston [14th Dist.] 1994, writ denied). Moreover, the Texas Supreme Court has, on at least two occasions, held that a plaintiff cannot recover both repair costs and difference-in-value damages, as RLJ has done in this case.[19] *Houston Unlimited, Inc.*, 443 S.W.3d at 825-26. *See Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 276 (Tex. 2004) ("Because the one claim is included in the other, the two claims are mutually exclusive; a landowner cannot recover both in the same action."); *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978).

In addition to the issue of whether stigma damages can even be recovered under Texas law, the circumstances in this case do not warrant a recovery of such damages. ESG did not sell the Hotel to RLJ or their predecessors, and did not construct the Hotel. ESG performed architectural services. Any stigma damages based on alleged lost market value might make some sense if this were a transaction in which ESG sold the Hotel to RLJ or their predecessor and the Hotel was not worth what it should have been because of defects. That is not the case here. There is not a single Texas case in which a court has even suggested imposing stigma damages on an architect that neither sold the property in question nor constructed the improvements on the property.

---

[19] The Final Judgment includes both $700,000 in market value damages and $15,000 in costs of repair. CR:1127; 1711.

Further, from the standpoint of RLJ's actual "losses," RLJ never attempted to sell the Hotel and there is no evidence of any intent to do so at any time in the foreseeable future. RR:V.7, 184-85. Aside from repair costs, the only types of "losses" RLJ could have conceivably experienced resulting from alleged defects in the Hotel would be lost profits. There is no evidence of any actual lost profits associated with ESG's work on the Hotel project. To the contrary, the Hotel performed better than expected even with the alleged defects. RR:V.7, 172-74. In any event, RLJ did not request any jury question on the amount of lost profits attributable to ESG, and did not object to the trial court's failure to submit such a question. Without a jury finding on these alleged damages, there can be no recovery. *See* Tex. R. Civ. P. 279.

Finally, lost profits are not recoverable in this case because they were contractually waived. The contract between White Lodging and ESG provided that White Lodging (RLJ's predecessor-in-interest)[20] "waive(s) consequential damages for claims, disputes or other matters in question arising out of or relating to this Agreement." CR:66 (§1.3.6). Consequential damages include lost profits. *See Mood v. Kronos Prods., Inc.*, 245 S.W.3d 8, 12 (Tex. App.—Dallas 2007, pet. denied). Thus, RLJ cannot recover any alleged lost profits based on their breach of

---

[20] As an alleged assignee of White Lodging's rights, RLJ would stand in the shoes of White Lodging and be subject to the same contractual limitations and defenses. *Thweatt v. Jackson*, 838 S.W.2d 725, 727-28 (Tex. App.—Austin 1992), *aff'd*, 883 S.W.2d 171 (Tex. 1994); *Bloom v. Burkholder Corp.*, No. 05-94-01297-CV, 1995 Tex. App. LEXIS 4029, at *6-7 (Tex. App.—Dallas May 30, 1995).

contract claim. *See Stonehill-PRM WC I, L.P. v. Chasco Constructors, Ltd.*, No. 03-08-00494-CV, 2009 Tex. App. LEXIS 1019, at *23-24 (Tex. App.—Austin Feb. 11, 2009, no pet.) (mem. op.) (upholding contractual waiver of consequential damages, including lost profits).

## F. *RLJ's legally insufficient evidence of market value damages requires a take-nothing judgment in favor of ESG.*

The Texas Supreme Court has repeatedly held that rendition of judgment in favor of the defendant is the proper relief when a plaintiff fails to offer legally sufficient evidence of market value damages. *See Houston Unlimited, Inc*., 443 S.W.3d at 838; *McGinty*, 372 S.W.3d at 629 ("[The plaintiff] cannot opt for the difference-in-value damages awarded by the jury because he offered no evidence of the value of his house at the time of closing. Accordingly, without hearing oral argument, we grant [the defendant's] petition for review, reverse the court of appeals' judgment, and render judgment that [the plaintiff] take nothing."). Because there is no evidence supporting the $700,000 in market value damages in the Final Judgment, this Court should render a take-nothing judgment in favor of ESG on that claim.

In assessing judgment against ESG, the trial court added the following damages found by the jury: (1) $700,000 in Market Value Damages; (2) $70,000 for "barrier remediation" costs; (3) $15,000 for the "reasonable and necessary cost of repairs to the [H]otel;" and (4) an attorneys' fee award of $901,650.96.

CR:1127; 1711. The trial court then subtracted credits from the previous settlements of other settling parties totaling $1,170,000 to reach the final amount of $516,650.96. CR:1711.

As ESG previously explained, the award of attorneys' fees was erroneous. Even if appropriate, however, the absence of the market value damages from the calculation of damages means the settlement credit of $1,170,000 would exceed the $986,650.96 total of attorneys' fees and the other remaining damages.[21] As a consequence, this Court should reverse the Final Judgment issued by the trial court and render a take-nothing judgment in favor of ESG on all claims in this case.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant Elness, Swenson, Graham Architects, Inc. prays that this Court reverse the Final Judgment of the trial court and render a take-nothing judgment in favor of ESG; and for general relief.

---

[21] This figure is the total of the $901,650.96 in attorneys' fees, $70,000 in "barrier remediation" costs, and $15,000 in "repair" costs. CR:1127; 1711.

Respectfully submitted,

_/s/ Weston M. Davis_____
**Gregory N. Ziegler**
Texas Bar No. 00791985
GZiegler@MacdonaldDevin.com
**Weston M. Davis**
Texas Bar No. 24065126
WDavis@MacdonaldDevin.com
**Steven R. Baggett**
Texas Bar No. 01510680
SBaggett@MacdonaldDevin.com
**MACDONALD DEVIN, PC**
1201 Elm Street
3800 Renaissance Tower
Dallas, Texas 75270
214.744.3300 telephone
214.747.0942 facsimile

**Attorneys for Appellant
Elness, Swenson, Graham
Architects, Inc.**

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing *Appellant's Brief* and attached *Appendix* was served on all counsel of records in accordance with the Texas Rules of Appellate Procedure via eFiling, on April 10, 2015:

Michael Huddleston
Stephen Gibson
Benton T. Wheatley
Tracy L. McCreight
Jessica C. Neufeld

58

MUNSCH HARDT KOPF & HARR, P.C.
401 Congress Ave, Suite 3050
Austin, Texas 78701
512.391.6100
512.391.6149 fax

_/s/ Weston M. Davis_____
**Weston M. Davis**

## CERTIFICATE OF COMPLIANCE

Pursuant to Tex. R. App. P. 9.4, I hereby certify that this petition contains 13,851 words. This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying upon the word count provided by the software used to prepare the document.

_/s/ Weston M. Davis_____
**Weston M. Davis**

## APPENDIX CONTENTS

**A.**     CR:1708-1712: Final Judgment.

**B.**     CR:1121-1129: Jury Charge.

**C.**     Tex. Civ. Prac. & Rem. Code § 38.001.

831104.2   402/122

Notice sent: Final Interlocutory None
Disp Parties: ALL
Disp code: CVD / CLS 4618
Redact pgs:
Judge SAY Clerk BH

DC          BK14239 PG58



CAUSE NO. D-1-GN-10-002325

| | | |
|---|---|---|
| RLJ II-C AUSTIN AIR, LP; RLJ II-C AUSTIN AIR LESSEE, LP; and RLJ LODGING FUND II ACQUISITIONS, LLC, | § § § § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § | |
| vs. | § § | |
| EBCO GENERAL CONTRACTOR, LTD; EBCO/WARRIOR MANAGEMENT LLC; ELNESS, SWENSON, GRAHAM ARCHITECTS, INC.; MARK SWENSON, Individually; TERRACON CONSULTANTS, INC.; TODD E. SWOBODA, P.E., Individually; and ALCADIO CHAPA, JR. formerly D/B/A JR'S CONCRETE CONSTRUCTION, | § § § § § § § § § § § § | TRAVIS COUNTY, TEXAS |
| Defendants and Third-Party Defendants. | § | 200TH JUDICIAL DISTRICT |

**FINAL JUDGMENT**

On May 5, 2014, this case was called for trial. Plaintiffs RLJ II-C AUSTIN AIR, LP;

RLJ II-C AUSTIN AIR LESSEE, LP; and RLJ LODGING FUND II ACQUISITIONS, LLC

("Plaintiffs") appeared through a representative and announced ready for trial. Defendants

ELNESS, SWENSON, GRAHAM ARCHITECTS, INC. ("ESG") and EBCO GENERAL

CONTRACTOR, LTD and EBCO/WARRIOR MANAGEMENT LLC (collectively, "EBCO")

each appeared through a representative and announced ready for trial.

Before trial, Plaintiffs asserted claims pursuant to the doctrine of equitable subrogation

against defendants EBCO, ESG, and Terracon Consultants, Inc. ("Terracon"), which were

disposed of on partial summary judgment that Plaintiffs take nothing on these claims against

EBCO, ESG, and Terracon.

---

**FINAL JUDGMENT**                                                                 Page 1
819658 402.122

**APPENDIX A**

Plaintiffs also asserted claims against defendants MBA Structural Engineers, Inc. ("MBA"), Mark Swenson, and Todd Swoboda, which were disposed of before trial by partial summary judgment that Plaintiffs take nothing against MBA, Swenson, and Swoboda.

Before trial, Plaintiffs also non-suited all their claims against the following defendants: Andrew Marlin, Davinci Pools, LLC ("Davinci"), Bridgeview Plumbing, Inc. ("Bridgeview"), and Champion Site Prep, LP ("Champion").

Plaintiffs also asserted claims against EBCO Advanced Building Systems, Ltd. ("EBCO Systems") , which were disposed of before trial by partial summary judgment that Plaintiffs take nothing against EBCO Systems.

EBCO asserted third-party claims against third-party defendants Davinici, Bridgeview, and Champion, which were disposed of before trial by partial summary judgment that EBCO take nothing against Davinci, Bridgeview, and Champion.

Before trial, EBCO also non-suited all its claims against third-party defendants, White Lodging Services Corporation.

Before trial, EBCO also non-suited all its claims against third-party defendant Alacadio Chapa, Jr. formerly d/b/a JR's Concrete Construction.

EBCO also asserted claims against Andrew Marlin and MBA, which were disposed of before trial by summary judgment that EBCO take nothing against Marlin and MBA.

Before trial, ESG non-suited all its claims against third-party defendants Griffin Engineering and Gregory Griffin.

ESG also asserted claims against Andrew Marlin and MBA, which were disposed of before trial by summary judgment that ESG take nothing against Marlin and MBA.

---

**FINAL JUDGMENT**
819658 402.122

Page 2

Before trial, the Court dismissed Plaintiffs' claim against Terracon for breach of the Materials Testing Contract pursuant to Texas Civil Practice & Remedies Code section 150.002(e).

Before trial, Plaintiffs non-suited all their claims against Terracon and all remaining claims against Todd Swoboda.

Before trial, the Court rendered partial summary judgment that Plaintiffs take nothing on their tort claims against Defendants and thereby rendered moot all defendants' and third-party defendants' cross-claims for contribution.

During trial, Plaintiffs voluntarily dismissed all remaining claims that it had against EBCO pursuant to the agreement of the parties.

The remaining issues in the case proceeded to trial to the jury. After a jury was impaneled and sworn, it heard evidence and arguments of counsel. In response to the jury charge, the jury made findings that the Court received, filed, and entered of record. The questions submitted to the jury and the jury's findings are ~~attached as Exhibit A~~ of record and incorporated by reference.

After a post-verdict hearing, the Court granted the motion of ESG for the application of the one-satisfaction rule to apply the sum of the amount of the settlements between Plaintiffs and EBCO and Plaintiffs and Terracon as credits ("the Settlement Credit") against the amount awarded by the jury to Plaintiffs as damages for ESG's failure to comply with the Architectural Contract. Accordingly, pursuant to the "one-satisfaction rule," the Court applies the Settlement Credit of $1,170,000 against the sum of the jury award of damages and the attorney's fees award.

By agreement of the parties, the matter of attorney's fees was submitted to the Court for determination. After considering the Plaintiffs' Amended Motion for Attorney's Fees and ESG's

---

**FINAL JUDGMENT**                                                              **Page 3**
819658  402.122

Response to Plaintiffs' Amended Motion and the arguments of counsel, the Court overruled ESG's objections to Plaintiffs' Amended Motion for Attorney's fees and finds that $901,650.96 was a reasonable and necessary attorney's fee for the presentation of Plaintiffs' claims for breach of contract claim against ESG.

The Court also considered by submission only the issue of Plaintiffs' entitlement to attorney's fees despite the application of the Settlement Credit. The Court overruled ESG's objection to Plaintiffs' entitlement to attorney's fees despite the application of the Settlement Credit and found that Plaintiffs were entitled to attorney's fees and to present evidence of attorney's fees.

The Court hereby RENDERS judgment as follows:

1.      The Court ORDERS that Plaintiffs collectively recover the following from ESG:

   a.  The amount of $516,650.96, being the sum of the jury's award of $785,000 as actual damages and the attorney's fee award of $901,650.96, less the Settlements Credit of $1,170,000;

   b.  Court costs; and

   c.  Post-judgment interest on all of the above at the rate of 5% compounded annually from the date this judgment is signed until all amounts are paid in full.

2.      The Court further ORDERS that if this judgment is appealed to an intermediate court of appeal and modified or reversed in favor of Plaintiffs, Plaintiffs will additionally recover from ESG the amount of $125,000, representing the anticipated reasonably and necessary fees and expenses that would be incurred by Plaintiffs.

**FINAL JUDGMENT**                                                    Page 4
819658  402.122

3. The Court further ORDERS that if this judgment is appealed to the Texas Supreme Court and modified or reversed in favor of Plaintiffs, Plaintiffs will additionally recover from ESG the amount of $50,000, representing the anticipated reasonable and necessary fees and expenses that would be incurred by Plaintiffs.

4. This judgment is intended to be an appealable judgment that fully and finally disposes of all claims between and among all parties to this proceeding and hereby finally disposes of all claims and all parties to this proceeding.

5. All relief requested by any party to this proceeding not expressly granted in this judgment is hereby denied. Such denial includes but is not limited to all declaratory relief sought by ESG pursuant to chapter 37 of the Texas Civil Practice and Remedies Code against Plaintiffs.

6. The Court ORDERS execution to issue for this judgment.

SIGNED on ___August 14___, 2014.

_____
THE HONORABLE STEPHEN YELENOSKY

---

**FINAL JUDGMENT**
819658 402.122

Page 5



## CAUSE NO. D-1-GN-10-002325

| | | |
|---|---|---|
| RLJ II-C AUSTIN AIR, LP; RLJ II-C AUSTIN AIR LESSEE, LP; and RLJ LODGING FUND II ACQUISITIONS, LLC, | § § § § | IN THE DISTRICT COURT OF |
| Plaintiffs, | § § § | |
| vs. | § § § | |
| EBCO GENERAL CONTRACTOR, LTD; EBCO ADVANCED BUILDING SYSTEMS, LTD; EBCO/WARRIOR MANAGEMENT LLC; ELNESS, SWENSON, GRAHAM ARCHITECTS, INC. | § § § § § § § | TRAVIS COUNTY, TEXAS |
| Defendants and Third-Party Defendants. | § § § § § § § § | 200TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

Members of the Jury:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict. You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or any other electronic device during your deliberations for any reason. Rely on the Court Operations Officer to notify you if she receives a call for you on the emergency number she gave you.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should

1

May 14, 2014

Filed in The District Court of Travis County, Texas

MAY 15 2014 BH

At 9:07 A M.

Amalia Rodriguez-Mendoza, Clerk

**APPENDIX B**

Filed in The District Court of Travis County, Texas

MAY 16 2014 BH

At 3:07 P M.

Amalia Rodriguez-Mendoza, Clerk

rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

Here are the instructions for answering the questions.

1. Do not let bias, prejudice, or sympathy play any part in your decision.

2. Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3. You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instructions.

4. If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5. All the questions and answers are important. No one should say that any question or answer is not important.

6. Unless the instruction for a particular question tells you otherwise, a "yes" answer must be based on a preponderance of the evidence. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." When you answer a question that requires an answer other than "yes" or "no," your answer must be based on a preponderance of the evidence, unless the instruction for that particular question tells you otherwise.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

7. A fact may be established by direct evidence or by circumstantial evidence or both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

8. Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

9. Do not answer questions by drawing straws or by any method of chance.

10. Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

2

May 14, 2014

11. Do not trade your answers. For example, do not say, "I will answer this question your way if you answer another question my way."

12. To return a verdict, the **same** group of at least 10 of you must agree on each and every answer. You may **not** have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

3

May 14, 2014

## Instructions and Definitions

**Assignment.** White Lodging Services Corporation, Inc. (White Lodging) assigned the contracts and causes of action in this lawsuit to the RLJ Plaintiffs in this case. Therefore RLJ "steps into the shoes" of White Lodging and RLJ and White Lodging should be considered one and the same for the purposes of answering the questions below.

**"Architectural Contract"** means the AIA B141 – 1997 Standard Form of Agreement Between Owner and Architect entered into between White Lodging Services Corporation, Inc. and Elness Swenson Graham Architects, Inc. dated January 1, 2005, and all incorporated exhibits and attachments.

4

May 14, 2014

## QUESTION 1

Did ESG fail to comply with the Architectural Contract by failing to coordinate as required by the contract?

Answer "Yes" or "No."

Answer: ___*NO*___

5

May 14, 2014

## QUESTION 2

Did ESG fail to comply with the Architectural Contract regarding the structural engineering services required by the contract?

Answer "Yes" or "No."

Answer: ____Yes____

6

May 14, 2014

If you answered "Yes" to Questions 1 and/or 2, then answer the following question. Otherwise, do not answer the following question.

## QUESTION 3

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate White Lodging for its damages, if any, that resulted from ESG's failure to comply with the Architectural Contract that you found in answer to Questions 1 and/or 2?

In answering questions about damages, answer each question separately. Do not increase or reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what any party's ultimate recovery may or may not be. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Consider only the following elements of damages, if any, and none other. Answer separately in dollars and cents for damages, if any:

a) The difference, if any, between the value of the hotel as constructed and the value of the hotel had ESG complied with the Architectural Contract. The difference in value, if any, shall be determined as of August 31, 2010.

Answer: $700,000.00

b) The reasonable and necessary cost, if any, for barrier remediation that you find is due to ESG's failure to comply.

Answer: $70,000.00

c) The reasonable and necessary cost of repairs to the hotel, if any, made through August 31, 2010 that you find is due to ESG's failure to comply.

Answer: $15,000.00

7

May 14, 2014

When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

The presiding juror has these duties:

1) preside over your deliberations, meaning manage the discussions, and see that you follow these instructions
2) write down the answers you agree on;
3) write down and give to the Court Operations Officer any questions you have for the judge without revealing any answers you have agreed on and without revealing any vote(s) taken in the jury room;
4) get the signatures for the verdict certificate; and
5) notify the Court Operations Officer that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now.

**Instructions for Deliberating, Reaching a Verdict, & Signing the Verdict Certificate:**

1) All jurors should participate in the jury's deliberation on every question.
2) To return a verdict, the **same** group of at least 10 of you must agree on each and every answer. You may **not** have one group of 10 jurors agree on one answer and a different group of 10 jurors agree on another answer.
3) Only those who agree on each and every answer should sign the verdict. A juror who agrees with the answer to some questions, but not all, should *not* sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

_____
Judge Presiding

8

May 14, 2014

1128

## Verdict Certificate

Those of us who have signed below agree to each and every answer.

Gregg Shirley

Lindy Buckley

Huong Bailie

Carin Peterson

Marilyn Reed-Bridges

Eric Polzer

Michael Boswell

Kathryn Foster- Cornelius

William Molloy

Kimbrea Robinson

Cynthia Collier

Jaclyn Sandeen

9

May 14, 2014

 LexisNexis®

1 of 1 DOCUMENT

LexisNexis (R) Texas Annotated Statutes
Copyright © 2014 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group
All rights reserved.

\*\*\* This document is current through the 2013 3rd Called Session \*\*\*

CIVIL PRACTICE AND REMEDIES CODE
TITLE 2. TRIAL, JUDGMENT, AND APPEAL
SUBTITLE C. JUDGMENTS
CHAPTER 38. ATTORNEY'S FEES

**GO TO TEXAS CODE ARCHIVE DIRECTORY**

*Tex. Civ. Prac. & Rem. Code § 38.001* (2014)

§ 38.001. Recovery of Attorney's Fees

A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for:

(1) rendered services;

(2) performed labor;

(3) furnished material;

(4) freight or express overcharges;

(5) lost or damaged freight or express;

(6) killed or injured stock;

(7) a sworn account; or

(8) an oral or written contract.

**HISTORY:** Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

**NOTES:**

Legislative Note. --
\* See *Texas Litigation Guide,* Ch. 22, *Attorney's Fees*; *Texas Torts and Remedies,* Ch. 105, *Attorney's Fees and*

**APPENDIX C**

*Costs.*

LexisNexis (R) Notes:

CASE NOTES

1. Subcontractor was not entitled to attorneys' fees in its maritime contract dispute because the general rule of maritime law that parties bear their own costs, coupled with the need for uniformity in federal maritime law, precludes the application of state attorneys' fee statutes, such as *Tex. Civ. Prac. & Rem. Code Ann. § 38.001*, to maritime contract disputes. Viking Prospector, Inc. v. Xtreme Indus., L.L.C. (In re Viking Offshore (USA) Inc.), *2009 Bankr. LEXIS 2276 (Bankr. S.D. Tex. July 31 2009).*

2. Assuming, without deciding, that Tex. Civ. Prac. & Rem. Code Ann. § 38.0001 applied in the case, the defendant failed to show that it was entitled to attorneys' fees as the prevailing party on its counterclaim in admiralty proceedings where the billing records submitted by the defendant did not segregate the time spent and the fees incurred for work on the counterclaims on which it prevailed from the time and fees relating to counterclaims that were unsuccessful nor from the time and fees relating to its defense. *Tucker Energy Servs. v. Noble Denton & Assocs., 2003 U.S. Dist. LEXIS 25593 (S.D. Tex. June 3 2003).*

3. Evidence of attorney fees was sufficient to support an award in favor of an orthodontic patient and her mother under the Texas Deceptive Trade Practices Act where they made a proper claim for attorney fees, the proceeding was before the court, and the reviewing court presumed the trial court took judicial notice of the usual and customary attorney fees. *Froemming v. Perez, 2006 Tex. App. LEXIS 2154 (Tex. App. San Antonio Mar. 22 2006).*

4. Where minivan buyers moved for summary judgment on all their claims against a seller, including their request for attorney fees under *Tex. Bus. & Com. Code Ann. § 17.50(d)*; *Tex. Civ. Prac. & Rem. Code Ann. § 38.001*, which was denied, the issue of attorney fees proceeded to trial along with the buyers' other affirmative claims for relief. Accordingly, because the buyers failed to make any reference to the affidavit provided with their summary judgment motion, did not have their attorney testify about the reasonableness of the requested attorney fees, and did not introduce any evidence of attorney fees at trial, the trial court did not err in instructing a verdict against them on the issue of attorney fees. *Manon v. Tejas Toyota, Inc., 162 S.W.3d 743, 2005 Tex. App. LEXIS 2663 (Tex. App. Houston 14th Dist. 2005).*

5. In a home builder's action to recover on a construction contract, a homeowner was entitled to recover attorney fees for successful prosecution of claims; a consumer could recover attorney fees incurred in the successful prosecution of a claim under the Texas Deceptive Trade Practices-Consumer Protection Act, *Tex. Bus. & Com. Code Ann. §§ 17.41-17.63*, even though the amount of damages awarded to the consumer was entirely offset by the amount awarded to an opposing party; the same rule applied for recovery of attorney fees under former Tex. Rev. Civ. Stat. Ann. art. 2226. *Matthews v. Candlewood Bldrs., Inc., 685 S.W.2d 649, 1985 Tex. LEXIS 750, 28 Tex. Sup. Ct. J. 284 (Tex. 1985).*